**In re ESTATE OF Rowland BURDON–MULLER.**

Supreme Judicial Court of Maine.

Argued Nov. 9, 1982.

Decided March 4, 1983.

Dennis J. Jumper (orally), Wiscasset, for Michael Wigley Severne.

Stanley W. Karod (orally), Camden, for Paysons & Brets.

Collins, Crandall & Hanscom, P.A., Samuel W. Collins, Jr. (orally), Rockland, for Museum of Fine Arts of Boston, et al.

Richard A. McKittrick, Camden, for Penob. Bay Med. Center.

Harmon, Jones & Sanford, John J. Sanford (orally), Gilbert G. Harmon, Camden, for USF&G et al.

Calderwood, Ingraham & Gibbons, Mark W. Ingraham, Jr., Camden, for United Camden-Rockport Charieies.

Before GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

VIOLETTE, Justice.

Rowland Burdon-Muller died on December 23, 1980, leaving behind a will executed in September 1971. That will created the charitable remainder trusts which are the subject of this dispute. In April 1981, the will's executors filed a "Petition for Reformation of Testamentary Trusts" in Knox County Probate Court to reform the will to qualify for a federal estate tax charitable deduction. The probate judge allowed the petition and reformed the will to bring it into compliance with Internal Revenue Service (IRS) requirements. The life beneficiaries under the trusts appeal both the fact and the manner of the reformation; three of the charitable remaindermen cross-appeal, contending that the reformation did not go far enough.[1]

We conclude that the probate judge properly ruled that the will could be reformed but that he erred in the substance of the reformation. We therefore sustain both the appeal and the cross-appeal in part and vacate the judgment.

I.

Both testamentary trusts in Burdon-Muller's will specify that the net income of each trust is to be paid to the life beneficiaries and, on their deaths, the remainders are to

---

1. Appellants are Andre Bret, Maria Bret, Wendell Payson, and E. Catherine Payson, life beneficiaries of a $100,000 trust, and Michael Wigley Severne, life beneficiary of a residuary trust. Appellees are charitable remaindermen Penobscot Bay Medical Center, United Camden-Rockport Charities, Inc., President and Trustees of Colby College, Boston Museum of Fine Arts, and Boston Symphony Orchestra; the latter three are also cross-appellants.

be given free from trust to the charitable remaindermen.[2] The will also contains a provision, article 15(n),[3] authorizing Burdon-Muller's trustee to administer the trusts as "unitrusts", trusts "from which a fixed percentage of the net fair market value of the trust's assets, valued annually, is paid each year to the beneficiar[ies]." *Black's Law Dictionary* 1376 (5th ed. 1979). Burdon-Muller did not himself specify the unitrust percent, but left the trustee to select payments amounting to "not less than five percent (5%) of the fair market value of the trust assets as determined each year." The trustee is also directed "to take any other action with respect to the distribution of income or principal of any trust created under this Will to insure that an estate tax charitable deduction shall be allowed . . . ."

 The IRS does allow an estate tax charitable deduction for qualifying charitable remainder unitrusts, with the size of the deduction inversely proportional to the unitrust percent paid annually to the life beneficiaries. *See* IRC § 664(e) (Law.Co-op. 1974).[4] Although, as drafted, Burdon-Muller's testamentary trusts do not qualify for

2. The provisions creating the trusts read, in relevant part:

TWELFTH: I give and bequeath to the UNITED STATES TRUST COMPANY OF NEW YORK, IN TRUST NEVERTHELESS, the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) to invest the same and to distribute the income therefrom as follows:

(a) To pay sixty percent (60%) of the net income from this trust to ANDRE and MARIA BRET, jointly, and to the survivor of them for and during the term of their joint lives:

(b) To pay forty percent (40%) of the net income from this trust to WENDELL PAYSON for and during the term of his life: upon the death of the said WENDELL PAYSON to pay forty percent (40%) of the net income from this trust to the wife of said WENDELL PAYSON for and during the term of her life:

(c) Upon the death of ANDRE and MARIA BRET to pay sixty percent (60%) of the then principal of the trust estate, free from trust, to the BOSTON MUSEUM OF FINE ARTS . . .:

(d) Upon the death of MR. and MRS. WENDELL PAYSON to pay forty percent (40%) of the then principal of this trust estate, free from trust, to the said BOSTON MUSEUM OF FINE ARTS . . . .

It is my intent to set up a trust fund of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), the income of which is to be divided sixty percent (60%) to the BRETS and forty percent (40%) to the PAYSONS, and upon the death of the said beneficiaries, their proportionate part of the principal to go to said MUSEUM free from trust.

THIRTEENTH: I give, bequeath, devise and appoint all the rest, residue and remainder of my estate, real, personal or mixed, wherever situated and whenever acquired, to the UNITED STATES TRUST COMPANY of New York, IN TRUST NEVERTHELESS, to invest the same and to pay the net income therefrom to my nephew, MICHAEL WIGLEY SEVERNE, for and during the term of his life. Upon the death of the said MICHAEL WIGLEY SEVERNE to terminate this trust and to distribute the trust estate, free from trust, to the charitable organizations and in the proportions set forth below:

1. THIRTY PERCENT (30%) to the BOSTON MUSEUM OF FINE ARTS . . .:

2. TEN PERCENT (10%) to the BOSTON SYMPHONY ORCHESTRA . . .:

3. SIX PERCENT (6%) to UNITED CAMDEN–ROCKPORT CHARITIES, INC. . . . .:

4. FOUR PERCENT (4%) TO PENOBSCOT BAY MEDICAL CENTER . . .:

5. FIFTY PERCENT (50%) to THE PRESIDENT AND TRUSTEES OF COLBY COLLEGE . . . .

3. That provision reads as follows:

"FIFTEENTH: I give to my Trustee the following powers in addition to, and not in limitation of, its common law and statutory powers: . . . [(a) through (m) omitted]

(n) Any other provisions of this Will notwithstanding, my trustee shall be authorized to make annual payments to any non-charitable beneficiary of any trust created under this Will of not less than five percent (5%) of the fair market value of the trust assets as determined each year or the amount of the trust income (excluding capital gains) whichever is less or to take any other action with respect to the distribution of income or principal of any trust created under this Will to insure that an estate tax charitable deduction shall be allowed under the Internal Revenue Code in effect on the date of execution of this Will or in effect at the date of my death."

4. Although the trust beneficiaries may receive either life estates or estates "for a term of years (not in excess of 20 years)," IRC § 664(d)(2)(A) (Law. Co-op.1974), the instant case involves only beneficiaries of life estates.

such a deduction, the deduction will be allowed if the will is reformed so that the trusts comply with IRS requirements. *See* I.R.C. § 2055(e)(3) (Law.Co-op.Supp.1982).[5] The will presently fails in two ways to meet those requirements. First, the IRS requires that the will specify "a fixed percentage (which is not less than 5 percent) of the net fair market value of [a trust's] assets, valued annually," to be paid to the life beneficiaries. IRC § 664(d)(2)(A). Burdon-Muller's will, instead of specifying such a fixed percentage, merely recites the Internal Revenue Code's directive language: annual payments are to be made at a rate "of not less than five percent." Second, the IRS requires that a qualifying unitrust contain certain administrative provisions not found in Burdon-Muller's will. *See, e.g.,* IRC § 664(d)(2)(A)–(C).[6]

The probate judge, concluding that Burdon-Muller "clearly" intended to establish a five percent unitrust, accepted completely the will reformation proposed by Burdon-Muller's executors. First, the judge found that only a "scrivener's error" prevented article 15(n) from properly reflecting Burdon-Muller's intention that his estate benefit from the maximum possible estate tax deduction, i.e., one based on a five percent unitrust. The judge then noted that, in the testator's words, the powers granted the trustee in article 15(n) were to apply to the entire will, "[a]ny other provisions of [the] Will notwithstanding." He therefore resolved "any alleged difference between article 12 and 13 as compared to article 15 . . . in favor of article 15."

Under the probate judge's reformation, the trusts created in articles 12 and 13

remain substantially as originally drafted except that, instead of the trusts paying the life beneficiaries the trusts' net income, the trusts are to be administered as five percent unitrusts, thus severely reducing the amount to be paid the life beneficiaries. The reformation also adds articles defining how the unitrusts are to be valued in regular and short taxable years and in the unitrusts' final taxable years, as well as how the unitrusts are to be terminated. The new unitrusts are not to be subject to any power "to invade, alter, amend or revoke" and the unitrusts trustee is to be bound by certain fiduciary standards.

The life beneficiaries contend that Burdon-Muller intended that they receive the trusts' entire net income. They therefore raise two arguments on appeal. First, they argue that the testator's will should not be reformed at all. Although such a result would sacrifice the estate tax charitable deduction sought by Burdon-Muller in article 15(n), it would ensure that the life beneficiaries receive the trusts' net income. In the alternative, the life beneficiaries argue that, if the will is reformed to create unitrusts, the unitrust percent should be set high enough that the life beneficiaries would receive the equivalent of the net income as a percent of trust assets.

The charitable remaindermen, in contrast, argue that the probate judge properly determined that Burdon-Muller wished to achieve the maximum possible charitable deduction. They thus support the reformation of the will to create five percent unitrusts. Three charities cross-appealed, contending that one additional administrative

---

5. IRC § 2055(e)(3) reads in pertinent part:
 In the case of a will executed before December 31, 1978, . . . if a deduction is not allowable at the time of the decedent's death because of the failure of an interest in property which passes from the decedent to a person [to qualify as a charitable remainder unitrust], and if the governing instrument is amended or conformed . . . on or before the 30th day after the date on which judicial proceedings begin on or before December 31, 1981 (which are required to amend or conform the governing instrument), become fi-

nal, so that the interest is in a trust which meets the requirements of [a charitable remainder unitrust], a deduction shall nevertheless be allowed.
Burdon-Muller's will was executed in 1971; the will's executors filed their Petition for Reformation of Testamentary Trusts on April 10, 1981.

6. The IRS does permit provisions, such as the one in article 15(n), which limit annual payments to the lesser of the unitrust percent and the trusts' actual income. IRC § 664(d)(3)(A).

provision must be added to the will before the unitrusts will qualify for an estate tax charitable deduction. They urge us to add a paragraph to the will defining "income" as used in the trusts to correspond to the definition used in the relevant portion of the Internal Revenue Code.

## II

We begin our analysis by examining Burdon-Muller's will to determine whether, as a matter of law, the probate judge correctly ascertained his testamentary intent. *See Whicher v. Abbott*, 449 A.2d 353, 354–55 (Me.1982); *In re Estate of Thompson*, 414 A.2d 881, 887 (Me.1980); *Thaxter v. Fry*, 222 A.2d 686, 688 (Me.1966). Although testimony was heard before the probate judge, it focused almost exclusively on hypothetical rates of return for a trust fund. The only evidence going to the testator's intent was the testimony of the attorney who drafted the will that he did not recall why article 15(n) was drafted as it was. Therefore, we need only look to the will itself to determine his intent.

We turn first to the articles creating the testamentary trusts and find there a clear indication that the testator intended that the life beneficiaries receive the net income from each trust. In both articles 12 and 13, the will speaks of paying "the net income" to the life beneficiaries, while article 12 also speaks of Burdon-Muller's intent to "set up a trust fund ..., the income of which is to be divided" between the life beneficiaries.

The life beneficiaries' right to the trusts' net incomes, however, is potentially limited by the power granted Burdon-Muller's trustee in article 15(n). The trustee is there authorized to take any actions necessary with respect to the trusts in order to ensure an estate tax charitable deduction, including administering the trusts as unitrusts.

 We agree with the probate judge that Burdon-Muller intended, in article 15(n), to convert the trusts created in articles 12 and 13 into charitable remainder unitrusts to qualify the remainders for an estate tax charitable deduction. We are,

however, unable to agree with his conclusion that Burdon-Muller intended the unitrust percent to be as low as five percent. First, we find no evidence that the language "not less than five percent" was a scrivener's error that was intended to read "five percent." Rather, it appears that Burdon-Muller himself misconstrued the relevant IRS requirement for a fixed percentage.

We also find no evidence that Burdon-Muller intended that the trusts qualify for the maximum possible tax deduction. Burdon-Muller's will only instructs his trustee to "insure that *an* estate tax charitable deduction shall be allowed ...." (emphasis added). Although by the terms of the testator's will article 15(n) is to apply notwithstanding other provisions of the will, we do not find it necessary to overlook Burdon-Muller's clearly expressed wish in articles 12 and 13 that the life beneficiaries are to receive the trusts' net income. *Cf. Whicher*, 449 A.2d at 355 (conflicting portions of a will must be reconciled if possible).

We conclude that Burdon-Muller intended to give the life beneficiaries of his testamentary trusts the net income therefrom (articles 12 and 13) while ensuring that the trusts would qualify for an estate tax charitable deduction (article 15(n)). We further conclude that Burdon-Muller intended to accomplish these goals by authorizing his trustee to administer the trusts as charitable remainder unitrusts paying the life beneficiaries a fixed unitrust percent set by the trustee to approximate expected income. We therefore find that the probate judge erred in ruling that the testator intended to create a five percent unitrust.

## III.

The IRS requires that a qualifying charitable remainder unitrust specify a fixed unitrust percent; clearly, the trustee cannot himself alter Burdon-Muller's will to create such a fixed figure. However, although Burdon-Muller's misreading of the

tax code renders strict compliance with his directions impossible, a substantially identical result is reached if the probate judge, rather than Burdon-Muller's trustee, fixes the unitrust percent to approximate expected trust income and if the judge adds to the will the administrative provisions required by the IRS to qualify the trust remainders for an estate tax charitable deduction. Having thus determined Burdon-Muller's intent, we must next examine whether the probate judge may reform the will to qualify the trusts for an estate tax charitable deduction.

■ Probate courts have "jurisdiction in equity, concurrent with the Superior Court, of all cases . . . relating to the administration of the estates of deceased persons, to wills and to trusts which are created by will . . . ." 4 M.R.S.A. § 252. It is well settled that a court possessing such equitable powers may modify testamentary trust provisions where the modifications (1) relate to administrative, as opposed to dispositive, provisions, (2) are required by "necessitous circumstances", and (3) are consistent with the settlor's primary intent. *Canal National Bank v. Old Folks Home Association of Brunswick*, 347 A.2d 428, 436 (Me.1975) (citing *Elder v. Elder*, 50 Me. 535 (1861)); *see Whicher*, 449 A.2d at 356 (by implication); *Cassidy v. Murray*, 144 Me. 326, 328–29, 68 A.2d 390, 391–92 (1949); *Porter v. Porter*, 138 Me. 1, 4–8, 20 A.2d 465, 466–68 (1941); *Restatement (Second) of Trusts* §§ 167, 381 (1959). We conclude that reformation of Burdon-Muller's will to reflect IRS requirements and to establish a unitrust paying an amount approximating expected trust income meets those requirements.

The "administrative" provisions required by the IRS are just that, defining, e.g., how the trusts are to be valued annually and how they are to be terminated. *See Estate of Bird*, 69 Misc.2d 1015, 1016–17, 332 N.Y. S.2d 85, 87 (Sur.Ct.1972). Looking to the unitrust percent, we have already concluded that Burdon-Muller, relying on an erroneous reading of the Internal Revenue Code, intended that his trustee select a unitrust

percent based on expected market yields; merely ordering judicial selection of a percent figure based on the same factors, although it may result in the selection of a different figure, is not a material alteration in the substantive rights of the beneficiaries.

Two cases cited by appellants do not compel a different conclusion. *Canal National Bank* involved the reformation of four charitable trusts to permit compliance with new IRS requirements for private foundations. To comport with an Internal Revenue Code provision requiring certain levels of distributions to beneficiaries, we ordered reformation of one of those trusts to permit the trustees to invade the corpus when necessary, despite "the express limitation in the governing instrument that distributions be made from income 'only'." 347 A.2d at 436. In the dictum cited by appellants, we noted that "[i]t is clear from the instrument that the settlor's intention was concerned only with effecting gifts to charity; *no life income beneficiaries make claims on the settlor's bounty equal to those of the charitable beneficiaries, thus to prevent modification.*" *Id.* (emphasis added).

Our conclusion in the instant case does not conflict with our language in *Canal National Bank*. In *Canal National Bank*, invasion of the corpus for the benefit of charitable beneficiaries would clearly disturb the share going to any life income beneficiaries. In Burdon-Muller's case, judicial, rather than trustee, selection of a unitrust percent still results in the life beneficiaries receiving an amount approximating expected trust income. No dispositive provision of the will is thereby effected.

In *Shriners Hospital for Crippled Children v. Maryland National Bank*, 270 Md. 564, 312 A.2d 546 (1973), the Maryland Court of Appeals declined to reverse a trial court refusal to modify a testamentary trust to create a charitable remainder unitrust that would qualify for a federal estate tax deduction. The Maryland Court repeated with approval the trial court opinion, which concluded that the proposed

modifications, taken together, effected a material alteration in the substantive rights of the parties. The trial court specifically objected to several items in the proposed modification. One, necessary for IRS valuation of the charitable deduction, would have eliminated marriage as an event which would terminate one of the life beneficiaries' estates, while others were administrative provisions which the court found bore no relation to IRS requirements. *Id.* at 578–79, 312 A.2d at 554. The trial court noted, however, that setting a unitrust percent and adding most of the necessary administrative provisions would be within the court's power. Id. at 577, 312 A.2d at 553.[7] That conclusion is fully consistent with our ruling that the modifications required by the IRS in the instant case are "administrative" rather than "dispositive".

Modification of trust administrative provisions generally requires a showing of "necessitous circumstances". *Canal National Bank,* 347 A.2d at 436; *see Restatement (Second) of Trusts, supra,* at § 381 & comment d. In *Canal National Bank,* for example, we held that the threat of severe tax penalties applicable upon noncompliance with certain IRS requirements for private foundations "per se constitutes necessitous circumstances." 347 A.2d at 436. Although Burdon-Muller's estate is faced with paying a large sum in estate tax, rather than with paying IRS penalties, we nevertheless conclude that the instant situation demonstrates adequately necessitous circumstances. This is particularly true in light of the fact that, although reformation does slightly alter Burdon-Muller's administrative scheme, it does not in any way directly contradict any of his particular directions.

Finally, as we have previously concluded, reformation of Burdon-Muller's will to conform with IRS requirements is wholly consistent with his primary intent.

Our analysis obviously leads us to deny appellants' argument that the will should not be reformed. We therefore vacate the judgment of the probate court and remand the case for the probate judge to set the unitrust percent consistent with our determination of Burdon-Muller's intent.

### IV

We find no indication in the record that the probate judge ever addressed the issue raised before us on the cross-appeal. We grant the cross-appeal and, upon remand, direct the probate judge to rule on the modification urged by the cross-appellants.

The entry is:

Appeal and cross-appeal sustained.

Judgment vacated.

Remanded to the Probate Court for further proceedings consistent with the opinion herein.

All concurring.

---

7. The proposed reformation also contained a provision, required by the IRS, permitting the trustee to select a different charity if the named charitable remainderman failed to meet IRS specifications when the remainder came due. The *Shriners Hospital* trial court found that this constituted a change in substance requiring beneficiary approval before it could be judicially approved. *Id.* at 576–78, 312 A.2d at 553–54. The Maryland Court, however, relied on a state statute specifically requiring the consent of all named beneficiaries to any trust amendments necessary to comply with IRS charitable remainder trust provisions. Id. at 578, 312 A.2d at 554 (citing Md.Ann.Code art.

16 § 199D–1 (1973), now codified at Md.Est. & Trusts Code Ann. § 14–304 (1974)). *But see Estate of Bird,* 69 Misc.2d at 1017, 332 N.Y.S.2d at 87 (where will in no way "directs or even implies a course of conduct" different from that required by the IRS, and where testator clearly intended to create a qualifying charitable remainder unitrust, the court will reform the will to include all necessary provisions); *cf. Canal National Bank,* 347 A.2d at 436 (court will reform testamentary charitable trusts to conform to IRS requirements in spite of express particular trust provisions to the contrary where those provisions would otherwise frustrate settlor's general intent).