2005 ME 72

**April L. WHITE et al.**

v.

**FLEET BANK OF MAINE et al.**

Supreme Judicial Court of Maine.

Argued: May 18, 2005.
Decided: June 17, 2005.

Ralph A. Dyer (orally), Portland, for appellants.

John W. McCarthy (orally), Brent A. Singer, Rudman & Winchell, Bangor, for appellees.

Terry N. Snow, Cumberland, Michael J. Pearce, Portland, for Guardians ad Litem.

Panel: CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The appellants, descendants of Robert C. Moore, appeal from a judgment entered in the Cumberland County Probate Court (*Childs, J.*) enforcing an agreement to settle their dispute with Fleet Bank, the trustee of the Robert C. Moore and Elizabeth S. Moore Trusts. The descendants argue that (1) no binding agreement was reached in mediation; (2) the court erred in accepting Fleet's accounting of the trusts; (3) the court erred in dismissing the descendants' action to discharge Fleet as trustee of both trusts; (4) the court erred in dismissing the descendants' action to terminate the trusts; and (5) the court erred in denying the descendants' motion for injunctive relief.[1] We affirm the judgment.

## I. FACTS

[¶ 2] Much of the underlying facts regarding this appeal can be found in our previous opinion, *White v. Fleet Bank of Me.,* 1999 ME 148, 739 A.2d 373. In that opinion, we determined that a portion of the Robert C. Moore Trust violated the rule against accumulations. *Id.* ¶ 22, 739 A.2d at 380. We ordered that the accumulated amount be distributed to the intestate heirs of Robert C. Moore. *Id.* ¶ 25. This case involves the events that occurred upon remand.

[¶ 3] As the parties prepared to go to trial on the amount of the accumulation, they agreed to enter into mediation.[2] The primary mediation session occurred on January 17, 2002, and was attended by attorneys representing the Moore descen-

---

1. There are two other parties of interest to this case: a guardian ad litem for the unborn descendants of Robert C. Moore, and a guardian ad litem for the unborn and unascertained beneficiaries of the Elizabeth S. Moore Trust. Both of the guardians ad litem have joined Fleet's position for this appeal.

2. Unfortunately, the tape recorder the mediator used to record the mediation session malfunctioned, and no recording of the session exists.

dants, Fleet, and the unborn children of the Robert C. Moore Trust. At the end of that session, the parties all believed they had found a resolution to the matter, and they immediately began to circulate settlement documents.

[¶ 4] As the documents were exchanged and reviewed, the parties became increasingly antagonistic. The correspondence in the record indicates that the descendants believed Fleet was changing the terms of the deal, particularly as to the scope of the release of Fleet from any claims related to its service as trustee. Fleet, in turn, complained that the descendants were quibbling over the agreed upon terms and unnecessarily delaying the settlement. After attempting to find language agreeable to all, the parties reached an impasse.

[¶ 5] On January 2, 2003, Fleet filed a motion in the Probate Court to enforce the terms of the settlement agreed upon on January 17, 2002. In its motion, Fleet alleged that the parties reached a binding oral contract during the mediation. Fleet's motion laid out the terms, and asked the court to enter an order that implemented the agreement. The descendants opposed the motion. The court scheduled an evidentiary hearing on the matter.

[¶ 6] At the hearing, Fleet called three witnesses who had attended the mediation session: the mediator; one of Fleet's attorneys; and the guardian ad litem for Robert C. Moore's unknown descendants. All of these witnesses testified that the parties reached a binding agreement during the mediation. The witnesses also agreed on the major terms of this settlement, including the parties' intention that Fleet would withdraw as trustee for the Robert C. Moore and Elizabeth S. Moore Trusts, and that in exchange for this withdrawal the descendants would release

Fleet from any and all claims arising from its service as trustee.

[¶ 7] The descendants' lone witness at trial was Robert Tancredi, one of the descendants. Tancredi testified that he did not participate in the meeting at which the purported agreement was reached. Tancredi, however, testified that the documents Fleet submitted subsequent to the mediation did not reflect Tancredi's understanding of the agreement. After the hearing, the parties submitted written arguments supporting their respective positions on the motion to enforce the agreement.

[¶ 8] On March 16, 2004, the court issued an order enforcing the settlement agreement. Citing the testimony of the mediator and the attorneys who attended the session, the court determined that the parties had, in fact, reached a binding agreement during the January 17, 2002, mediation. The court adopted the terms laid out in Fleet's final proposed settlement documents, including an expansive release provision. Because the settlement called for a final accounting, the court ordered Fleet to submit an accounting within thirty days.

[¶ 9] Fleet filed its accounting on April 14, 2004, and the court accepted the filings over the descendants' objection. The court entered a final judgment on the settlement on October 26, 2004. In doing so, the court dismissed the descendants' pending petition to terminate the trusts, on the grounds that "[a] trust may not be terminated if the time fixed by the settlor has not elapsed, or if there is a purpose that has not been accomplished." The court also dismissed as moot the descendants' previously filed motions to discharge the trustee and to enjoin the trustee from decreasing its distributions to the beneficiaries of the Robert C. Moore Trust. The descendants filed a timely appeal.

## II. DISCUSSION

[¶ 10] The descendants raise a number of issues on appeal. Because the resolution of many of these issues depends upon whether or not the court erred in enforcing the settlement agreement, we begin with that issue.

### A. Competent Evidence Supports the Probate Court's Order Enforcing the Settlement Agreement

[¶ 11] The Probate Court's determination that the parties entered into a binding oral contract is a finding of fact. *Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 11, 708 A.2d 651, 655. We will vacate a trial court's determination that the parties intended to be bound by an agreement only if it was reached in clear error. *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044. Findings are clearly erroneous only when there is no competent evidence to support them. *See State v. Marden*, 673 A.2d 1304, 1308 (Me.1996).

[¶ 12] The record in this case contains ample evidence to support the court's conclusion that the parties intended to enter into an enforceable agreement. The three witnesses who were present during the negotiations testified that an enforceable agreement was reached. These witnesses agreed as to the material terms, including the broad release provision. The parties, in their post-mediation correspondence, all made references to the "agreement" reached in mediation. Even the descendants, in various correspondence and pleadings, took the position that an enforceable agreement existed, albeit one with terms different from those put forward by Fleet.

[¶ 13] The descendants highlight some conflicting evidence in the record, especially Fleet's initial post-mediation correspondence, in which it refers to the "plan agreed upon in principle." Agreements in principle are generally considered "agreements to agree," and are distinguished from enforceable agreements. *See Ault v. Pakulski*, 520 A.2d 703, 705 (Me.1987). The existence of some contrary evidence, however, does not require us to vacate. *See Harmon v. Emerson*, 425 A.2d 978, 982 (Me.1981) ("factual findings ... are not to be altered or overturned ... simply because an alternative finding *also* finds support in the evidence"). Because competent evidence exists to support the trial court's factual finding that an enforceable agreement was made, we affirm that finding.

### B. The Probate Court Did Not Err When it Accepted Fleet's Accounting

[¶ 14] The descendants argue that the accounting of the trusts Fleet filed with the Probate Court was insufficient. The settlement agreement required Fleet to file an accounting before it was discharged as trustee. Fleet filed a detailed summary of recent transactions of the trust accounts, but did not file a single document reflecting all transactions that occurred over the thirty-four-year life of the trust. Instead, Fleet relied on the fact that it had provided the trusts' beneficiaries with regular statements reflecting all transactions. The court accepted this as "sufficiently detailed and acceptable."

[¶ 15] The settlement agreement adopted by the court required Fleet to file a "final account" of the Robert C. Moore and Elizabeth S. Moore Trusts. The agreement required that these "final accounts" include the distribution plans called for by the settlement. Beyond that, the documents adopted by the court do not specify the form or contents of the required accountings.

[¶ 16] The settlement's accounting requirement is consistent with the requirements of the Uniform Probate Code, 18–A M.R.S.A. §§ 1–101 to 9–404 (1998 & Supp. 2004), which governs the Robert C. Moore and Elizabeth S. Moore Trusts.[3] The UPC provides that "[u]pon reasonable request, a beneficiary is entitled to a statement of the accounts of the trust annually and on termination of the trust or change of the trustee." 18–A M.R.S.A. § 7–303(c) (1998). We independently review the meaning of a statutory term. *Ashe v. Enter. Rent–A–Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159.

[¶ 17] The text of section 7–303 does not provide a specific description of what constitutes a sufficient "statement of accounts." The comment to section 7–303 states that, "[i]n most instances, the trustee will provide beneficiaries with copies of annual tax returns or tax statements that must be filed." 18–A M.R.S.A. § 7–303, Unif. Probate Code cmt.[4] The Michigan Court of Appeals has defined the scope of the beneficiaries' entitlement to "such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust." *In re Childress Trust*, 194 Mich. App. 319, 486 N.W.2d 141, 145–46 (1992) (citing RESTATEMENT (SECOND) OF TRUSTS § 173 cmt. c (1959)).

[¶ 18] We agree with the Michigan court that the primary purpose of a final accounting is to provide interested parties with the information they need to evaluate a trustee's discharge of its fiduciary duties to the beneficiaries. Although some courts have specifically defined the requisite contents of a final accounting, *see Zuch v. Conn. Bank & Trust Co.*, 5 Conn.App. 457, 500 A.2d 565, 568 (1985), we need not decide that question. The descendants concede that they received the regular statements from the trustee during the life of the trust. We agree with the court's conclusion that the information in these statements, combined with the updated information and distribution plan filed by Fleet, provided all the information necessary for the beneficiaries to evaluate the trustee's handling of the account. *See* Unif. Probate Code § 7–303 cmt., 8 U.L.A. 519, (stating that a trustee need not present the court with copies of statements furnished to beneficiaries because "parties are expected to assume the usual ownership responsibility for their interests including their own record keeping").

C. The Probate Court Properly Dismissed the Descendants' Other Motions

1. The Probate Court Properly Dismissed the Descendants' Motion to Terminate the Trusts

[¶ 19] As part of its final judgment, the Probate Court dismissed the descendants' pending motion to terminate both trusts. Generally, a trust may be terminated early "when its purpose has been accomplished or when there is no

---

3. Article VII of the Uniform Probate Code will soon be replaced with the Uniform Trust Code, P.L. 2003, ch. 618, § A–1 (effective July 1, 2005) (codified at 18–B M.R.S.A. §§ 101–1104 (Supp.2004)). Because the Uniform Trust Code was not effective at the time this case was decided, we decline the descendants' invitation to apply its provisions.

4. Although not reprinted in the Maine statutes, the comment to the Uniform Probate Code provides that if a "fiduciary accounting is to be prepared," the accounting is sufficient if it conforms to the Uniform Principles and Model Account Formats promulgated by the National Fiduciary Accounting Project. Unif. Probate Code § 7–303 cmt., 8 U.L.A. 519 (1998). However, neither the code nor the comment indicates when a "fiduciary accounting" is required.

good reason for the trust to continue and all beneficiaries are competent and release their interests." *Univ. of Me. Found. v. Fleet Bank of Me.*, 2003 ME 20, ¶ 10, 817 A.2d 871, 874. A trust may not be terminated early, however, if the time fixed by the settlor has not elapsed, or a material purpose of the settlor has not been accomplished. *Id.* ¶¶ 10–11, 817 A.2d at 874–75. The intent of the settlor, as determined by unambiguous language in the will, is a question of law that we review de novo. *Id.* ¶ 9, 817 A.2d at 874; *In re Estate of Burdon–Muller*, 456 A.2d 1266, 1270 (Me. 1983).

### a. Robert C. Moore Trust

■ [¶ 20] In our previous opinion in this case, we determined that the Robert C. Moore Trust was intended to endure so long as an interest may legally pass to a lineal descendent. *White*, 1999 ME 148, ¶ 17, 739 A.2d at 378. That time period is at least twenty-one years into the future, and most likely much longer. *See id.* ¶ 19 n. 13, 739 A.2d at 379 n. 13. Accordingly, the time intended by Moore has not yet elapsed, and the court correctly declined to terminate the trust.

### b. Elizabeth S. Moore Trust

■ [¶ 21] The controlling document that created the Elizabeth S. Moore Trust includes a spendthrift clause. We have held that a spendthrift clause, which prevents beneficiaries from anticipating trust income, "[carries] out the intent of the settlor and represent[s] a *material purpose of the settlor*." *Univ. of Me. Found.*, 2003 ME 20, ¶ 11, 817 A.2d at 875 (emphasis added).[5] Because the spendthrift clause in the Elizabeth S. Moore Trust evinces a material purpose of granting a qualified estate, the court correctly denied the petition to terminate the trust.

### 2. The Descendants' Motions to Discharge Fleet as Trustee and Enjoin Fleet from Decreasing its Distributions to the Trust's Beneficiaries Were Moot

■ [¶ 22] The descendants appeal the Probate Court's dismissal of two other pending motions: a motion to discharge Fleet as trustee, and a motion for injunctive relief. Pursuant to the terms of the agreement enforced by the court, Fleet is to be replaced as trustee of both trusts. Because we affirm that agreement, we also affirm the court's dismissal of the motion to discharge as moot.[6] Similarly, the

---

5. The descendants note that the Uniform Trust Code, 18–B M.R.S.A. § 411(3) (Supp. 2004), provides that "a spendthrift provision in the terms of the trust is not presumed to constitute a material purpose of the trust." *Id.* Because this provision is not effective until July 1, 2005, it does not affect the Probate Court's interpretation of a trust prior to that date. Under the rule laid out in *University of Maine Foundation v. Fleet Bank of Maine*, 2003 ME 20, ¶ 10, 817 A.2d 871, 874, the spendthrift clause in the Elizabeth S. Moore Trust effects a material purpose of the trust that prevents its early termination. Even if 18–B M.R.S.A. § 411(3) controlled this case, we note the Legislature's comment to this section:

[T]his conflicts with the Maine court's opinion in the *University of Maine Foundation*

case. However, there is authority that Maine courts will not broadly interpret a settlor's intent to create a spendthrift trust. As explained by the Uniform Comment, subsection 3 clearly leaves room for a court to conclude that a spendthrift provision was a material purpose of the settlor. Thus it may be most accurately described as an extension of or incremental change in Maine law.

18–B M.R.S.A. § 411, Maine cmt. (citation omitted).

6. Contrary to the descendants' assertions, we find no error in the court's consolidation of the action to discharge the trustee with the underlying case. The Probate Court has the authority to consolidate separate proceedings if they involve a "common question of law or

terms of the agreement release Fleet from liability for all claims, including actions pending at the time the court entered judgment on the settlement. Therefore, the motion for injunctive relief was also properly dismissed as moot.

The entry is:

Judgment affirmed.

fact," and if consolidation would be convenient to the parties and advance the interests of justices. M.R. Prob. P. 42.