2012 ME 8

**In re the PIKE FAMILY TRUSTS.**

Supreme Judicial Court of Maine.

Argued: Dec. 13, 2011.
Decided: Jan. 24, 2012.

Jeffrey P. Buhrman, Esq., South Portland, appellant pro se.

Albert G. Ayre, Esq., Portland, for appellee Joyce E. Jack.

William H. Childs, Esq. (orally), Westbrook, on the briefs, for appellee Elaine Pike.

Justin D. LeBlanc, LeBlanc & Young, P.A. (orally), Portland, for appellee Joyce E. Jack.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1] Jeffrey P. Buhrman, the sole trustee of the Clifton M. Pike Family Trust, a testamentary trust established under Clifton's will, appeals the decision of the Cumberland County Probate Court (*Mazziotti, J.*) granting the petition of the two adult children of Clifton and Doris M. Pike to combine the assets of Doris's estate into Clifton's trust, terminate both parents' trusts, and direct that the assets be distributed. The issue is whether a spendthrift provision [1] precludes the termination of the trusts. We affirm the judgment.

## I. FACTS AND PROCEDURE

[¶ 2] The essential facts are uncontested. Joyce E. Jack and Elaine A. Pike are the adult children of Clifton and Doris. Clifton died in 2003, and Doris died in 2007. Clifton and Doris executed substantially similar wills on the same date in 1999. Both wills [2] included clauses providing that the residue of the estate be used to establish a family trust for the surviving spouse, their children, and the children's families. Although the wills are substantially the same, we refer to Clifton's will because that is the operative one that established the trust at issue here.

[¶ 3] The spendthrift clause in Clifton's will states that "the interest of each beneficiary in the income or principal of any trust established under this Will shall not be subject to attachment or capable of anticipation or alienation, whether voluntary or involuntary." The will also states Clifton's intent in establishing the trust: "[M]y primary intent in establishing the trusts under this instrument is to provide for the comfort and support of my said wife and children after my death." The will provides: "I intentionally make no provision in this Will for my children or other issue who survive me, now living or hereafter born, except as expressly set forth herein."

[¶ 4] Clifton's will gave Doris a power of appointment to disburse the trust's remaining principal and undistributed income through her will. His will also provided that if Doris did not disburse the trust funds by appointment in her will, the trust was to be divided into separate trusts

---

1.  " 'Spendthrift provision' means a term of a trust that restrains both voluntary and involuntary transfer of a beneficiary's interest." 18–B M.R.S. § 103(15) (2011).

2.  Although Doris's will was not part of the record before the court, it took judicial notice

of that will, which had been filed in the proceeding on Doris's estate, and neither party objected. *See Guardianship of Jewel M.,* 2010 ME 80, ¶ 24, 2 A.3d 301 (noting that a court may take judicial notice of court records in other cases).

for each of the children. The will called for an independent trustee, who had sole discretion over payments from the income and principal of the trust, and it prohibited any beneficiary from serving as the independent trustee. Clifton's will named a bank to serve as the independent trustee. Clifton's will appointed Doris as the personal representative, and their daughter Joyce as the successor personal representative.

[¶ 5] Doris appointed Buhrman to serve as the independent trustee after the bank that had been named in the will declined to serve. Doris did not exercise the power of appointment to distribute Clifton's trust principal or income through her will. The primary asset in Clifton's trust is an apartment building that is owned and operated by the trust. Doris's trust has not been funded, and the assets in her estate, consisting of real estate and financial accounts, have remained separate.

[¶ 6] Joyce and Elaine filed a joint petition requesting that the court combine the trusts; direct the assets of Doris's estate into the trust; and terminate the trust so the assets may be distributed. Buhrman opposed the petition except for the request to consolidate the assets and combine the trusts. He argued that Clifton's will unambiguously states his intent to create a spendthrift trust for the lives of his children. Provided the trust is terminated, Joyce and Elaine would be the sole remaining direct beneficiaries of their mother's estate and their parents' trusts. The contingent beneficiaries of the trust consented to the termination of the trust and filed renunciations of interest in the trust, conditioned on its termination. The court granted the petition, and Buhrman filed a timely appeal.

## II. DISCUSSION

[¶ 7] We review de novo a court's determination of the intent of a settlor of a trust when that intent is determined by the unambiguous language in a will. *White v. Fleet Bank of Me.*, 2005 ME 72, ¶ 19, 875 A.2d 680. The settlor's intent is "gathered from the whole will." *Univ. of Me. Found. v. Fleet Bank of Me.*, 2003 ME 20, ¶ 10, 817 A.2d 871 (quotation marks omitted). "A court must interpret the will within the four corners of the document but may use the context of the entire will to interpret specific sections." *Estate of Silsby*, 2006 ME 138, ¶ 15, 914 A.2d 703 (quotation marks omitted). If the will is ambiguous, a court may consider extrinsic evidence. *Id.*

[¶ 8] Two or more trusts may be combined into a single trust "if the result does not impair rights of any beneficiary or adversely affect achievement of the purposes of the trust." 18–B M.R.S. § 417 (2011). "A noncharitable irrevocable trust may be terminated upon consent of all of the beneficiaries if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust." 18–B M.R.S. § 411(2) (2011). We have held that "[g]enerally, a trust may be terminated early when its purpose has been accomplished or when there is no good reason for the trust to continue and all beneficiaries are competent and release their interests." *White*, 2005 ME 72, ¶ 19, 875 A.2d 680 (quotation marks omitted).

[¶ 9] Prior to 2005, we recognized a common law presumption that a spendthrift clause, simply by virtue of its presence, was a material purpose of the trust: "Spendthrift clauses carry out the intent of the settlor and represent a material purpose of the settlor, the purpose being to prohibit beneficiaries from control and management of trust income and/or principal while the clause remains effective."

*Univ. of Me. Found.,* 2003 ME 20, ¶ 11, 817 A.2d 871 (citations omitted). By enactment of the Maine Uniform Trust Code, effective in 2005, the Legislature eliminated this presumption. P.L.2003, ch. 618, § A–1 (effective July 1, 2005) (codified at 18–B M.R.S. § 411(3) (2011)); *White,* 2005 ME 72, ¶ 21 & n. 5, 875 A.2d 680. Section 411(3) provides: "A spendthrift provision in the terms of the trust is not presumed to constitute a material purpose of the trust." The Uniform Comment provides: "Material purposes are not readily to be inferred. A finding of such a purpose generally requires some showing of a particular concern or objective on the part of the settlor, such as concern with regard to the beneficiary's management skills, judgment, or level of maturity." 18–B M.R.S.A. § 411 (Supp.2011), Uniform cmt. Pursuant to 18–B M.R.S. § 1104(1)(A) (2011), sections 411 and 417 apply to trusts created before 2005.

■ [¶ 10] Even in the absence of any presumption, a court may conclude that a spendthrift provision was a material purpose of the settlor. *White,* 2005 ME 72, ¶ 21 n. 5, 875 A.2d 680 (noting 18–B M.R.S.A. § 411, Maine cmt.). Here, however, Buhrman has failed to meet his burden. The court did not err. Buhrman's remaining arguments are not persuasive and we do not discuss them.

The entry is:

Judgment affirmed.