MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 26
Docket:       Ken-15-136
Argued:       November 3, 2015
Decided:      February 4, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
              HUMPHREY, JJ.


FIDUCIARY TRUST CO. et al.

v.

MANCHESTER H. WHEELER JR.

MEAD, J.

[¶1]  Manchester H. Wheeler Jr. appeals from a summary judgment entered by the Superior Court (Kennebec County, *Mullen, J.*) in favor of Fiduciary Trust Company on Fiduciary's complaint to determine the proper method of distributing the principal of a trust of which Wheeler is a beneficiary.  On appeal, Wheeler contends that the Superior Court erred in concluding that the doctrine of res judicata did not control the construction of the disputed term of the trust.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The relevant facts in the summary judgment record are undisputed. Fiduciary is the acting trustee of the Elizabeth S. Haynes and Robert H. Gardner Trust, created in 1911 and amended in 1918.  Pursuant to paragraph 1 of the trust,

2

the trust's net income was to be paid to Elizabeth S. Haynes's two daughters, Hope Manchester Wheeler and Muriel Sturgis Haynes, or their issue. Paragraph 1 provides:

> During the continuance of the trust to pay the net income thereof as often as quarterly to Hope Manchester Wheeler and Muriel Sturgis Haynes in equal shares during their lives, and *on the death of either of them who shall leave issue surviving her the share of said income which she would have received shall be paid to such of her issue* by right of representation as shall from time to time be living at the respective times of payment and on the death of either of them leaving no issue surviving her as well as in the case of the issue of one of them becoming extinct, the whole of said income shall be paid to the other if living, or if she be dead to such of her issue by right of representation as shall from time to time be living at the respective times of payment.

(Emphasis added.) Thus, upon the death of either of Elizabeth S. Haynes's daughters, the deceased daughter's share of the income would be paid to her "issue."

[¶3] The death of Hope Manchester Wheeler in 1955 triggered the need to determine to whom her share of the income should be paid. Through the presentation of a bill in equity to the Supreme Judicial Court, Fiduciary petitioned for the Court to determine whether the income should be paid only to Hope Manchester Wheeler's biological son, Manchester H. Wheeler, or whether the income should be shared with Hope Manchester Wheeler's adopted child, Hope

Wheeler Brown.[1]  *Fiduciary Trust Co. v. Brown*, 152 Me. 360, 361, 364, 131 A.2d 191 (1957).  Fiduciary also asked that we make the same determination about where the income Muriel S. Haynes was receiving should be directed after her death, because Muriel had no biological children but did have two adopted children, Letitia Haynes and Honora Haynes.  *Id.* at 364.  We reviewed the trust as a whole and concluded that, by using the word "issue," the settlor, Elizabeth S. Haynes, intended that the trust's income distributions be made only to children born to her daughters, thereby excluding Hope Manchester Wheeler's adopted child.[2]  *Id.* at 378-79.  We noted, however, that because Muriel was alive at the time of the decision, the contingency necessary to implicate a question concerning the redirection of her share of the income distribution had not arisen.  *Id.* at 370.

[¶4]  Although paragraph 1 controls the distribution of trust *income*, paragraph 2—which is at issue here—governs the distribution of *principal* upon

---

[1]  *Fiduciary Trust Co. v. Brown*, 152 Me. 360, 361, 131 A.2d 191 (1957), was presented to the Supreme Judicial Court sitting in original jurisdiction through a bill in equity.  At the time of the Court's decision in *Brown*, the Superior Court and the Supreme Judicial Court shared concurrent original jurisdiction over equitable matters.  *See id.* at 367 ("[T]he Supreme Judicial Court has authority to pass upon the questions raised by the presentation of a bill in equity seeking the construction and interpretation of the provisions of a trust indenture." (quotation marks omitted)); *Choate v. Adams*, 387 A.2d 227, 228 (Me. 1978) ("A 'bill in equity' could only be commenced either in the Superior Court or in the Supreme Judicial Court, which at that time shared concurrent original jurisdiction in all cases and proceedings in equity."); *Gerrish v. Lovell*, 146 Me. 92, 96, 77 A.2d 593 (1951) ("[T]here remains in the Supreme Judicial Court jurisdiction and power to hold *nisi prius* sessions when occasion requires in matters over which that court now has original jurisdiction.").

[2]  Hope Manchester Wheeler adopted her grandchild, Hope Wheeler Brown.  *Brown*, 152 Me. at 362, 131 A.2d 191.  We noted, however, "[t]hat in this particular case, Hope Wheeler Brown happens to be a blood descendant of the settlor is of no consequence as to the real issue before us for determination."  *Id.* at 378.

4

the trust's termination. Paragraph 2 provides, in pertinent part, "[t]wenty-one years after the death of the survivor of [Elizabeth S. Haynes's two daughters] and of Manchester Haynes Wheeler [Sr.] the principal . . . shall be paid over to the persons . . . to whom and in which it would then have been distributed *under the intestate laws of Maine then in force* . . . ."[3] (Emphasis added.) Unlike paragraph 1, paragraph 2 does not rely on the word "issue"; instead, it defers to state intestacy laws to determine beneficiaries at the time of termination.

[¶5] The trust terminated on December 26, 2013. On February 21, 2014, Fiduciary filed a complaint in the Kennebec County Probate Court asking that court to determine whether adopted children are entitled to a share of the principal pursuant to paragraph 2. The case was subsequently removed to the Superior Court. On September 29, 2014, Fiduciary moved for a summary judgment on the ground that paragraph 2 invokes Maine intestacy laws applicable at the time of the termination, and 2013 Maine intestacy laws provided (and still provide) that adopted children inherit from or through their adoptive parents just as biological children inherit from or through their biological parents.

---

[3] Paragraph 2 provides in full:

> Twenty-one years after the death of the survivor of them and of Manchester Haynes Wheeler the principal of the fund whether said Elizabeth S. Haynes be then living or not shall be paid over to the persons and in the proportions to whom and in which it would then have been distributed under the intestate laws of Maine then in force if it had then been personal property and said Elizabeth S. Haynes had then owned it in her own right and had then died intestate.

*See* 18-A M.R.S. § 2-109(1) (2013) ("An adopted person is the child of an adopting parent . . . .").

[¶6]    Thus, pursuant to Fiduciary's proposed distribution scheme, Honora Haynes, the only living adopted child of Muriel S. Haynes and the only living person in her generation, would receive one-third of the trust principal. Wheeler, the biological great grandson of the settlor,[4] objected to this distribution, contending that our 1957 decision in *Brown*, through the doctrine of res judicata, precluded the trial court from applying 2013 Maine intestacy laws because it had already been determined that Elizabeth S. Haynes did not intend to benefit adopted children.  On February 27, 2015, the Superior Court granted Fiduciary's motion for summary judgment, reasoning that res judicata did not prevent it from applying paragraph 2 of the trust because *Brown* only controlled paragraph 1.   Wheeler appealed.

## II.  DISCUSSION

[¶7]  Wheeler contends that the court erred in entering a summary judgment in favor of Fiduciary because both the claim- and issue-preclusion prongs of the res judicata doctrine prevented the Superior Court from applying paragraph 2 of the trust.

---

[4]  Wheeler is also the grandson of Hope Manchester Wheeler.

6

[¶8]  "We review the grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there is a genuine issue of material fact."  *Brady v. Cumberland Cty.*, 2015 ME 143, ¶ 10, 126 A.3d 1145 (quotation marks omitted).

[¶9]  "The intent of the settlor, as determined by unambiguous language in the will, is a question of law that we review de novo."  *White v. Fleet Bank of Me.*, 2005 ME 72, ¶ 19, 875 A.2d 680.  "The settlor's intent is gathered from the whole will."  *In re Pike Family Trusts*, 2012 ME 8, ¶ 7, 38 A.3d 329 (quotation marks omitted).  "A court must interpret the will within the four corners of the document but may use the context of the entire will to interpret specific sections."  *Id.* (quotation marks omitted).

[¶10]  The two branches of the res judicata doctrine are claim preclusion and issue preclusion.  *In re M.M.*, 2014 ME 15, ¶ 15, 86 A.3d 622.  Claim preclusion prevents "the relitigation of claims if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action."  *Id.* (quotation marks omitted).  Issue preclusion, also known as collateral estoppel, "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and

the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 9, 940 A.2d 1097 (quotation marks omitted). We address the applicability of claim preclusion and issue preclusion in turn.

[¶11] There is no dispute that the first and second elements of claim preclusion are satisfied here because *Brown* resulted in a final judgment involving Fiduciary and the privies of Wheeler. The controversy, therefore, is whether the meaning of paragraph 2 was, or might have been, litigated in *Brown*, and whether our decision in that case resolved that issue.

[¶12] In *Brown*, we determined that "[t]he word 'issue' as used in wills and in trust indentures is an ambiguous term [because] [i]t has been given various interpretations by different courts depending upon existing statutes and varying circumstances." *Brown*, 152 Me. at 371, 131 A.2d 191. To determine the settlor's intent underlying paragraph 1, we reviewed the entire trust, including paragraphs 1, 2, and 7, and the 1918 amendment to the trust. *Id.* at 370-71 ("Intention must be found in the language of the will read as a whole illumined in cases of doubt by the light of circumstances surrounding its execution.") (quotation marks omitted).

8

[¶13]   Although paragraph 2 was mentioned in *Brown*, the construction of that paragraph was outside the scope of our ultimate holding.  We made clear that our decision addressed only the meaning of "issue" in paragraph 1, stating,

> This conclusion is limited to a determination that Hope Wheeler Brown is not the "issue" of her adoptive mother, within the meaning and intent of the trust indenture we are asked to construe and interpret, and has no bearing or effect on any of the rights of [the adopted daughter] as a lineal descendant by blood of [the settlor].

*Id.* at 379.   Indeed, we refused to resolve any other questions based on contingencies that had not yet occurred, saying,

> While this court may have the power to answer questions of construction of a will or trust indenture before a contingency occurs, we prefer to abide by the rule . . . [that] we do not think it wise . . . to advise trustees, and to construe wills for their guidance until the time comes when they need instructions.  The fact that the question may arise sometime in the future is ordinarily not enough.  Such a question should not be decided until the anticipated contingency arises, or at least until it is about to arise, until it is imminent.

*Id.* at 370 (citations omitted) (quotation marks omitted).

[¶14]   Paragraph 2 was necessarily outside the scope of our holding because the contingency necessary for paragraph 2 to apply is the termination of the trust, and that did not occur until more than fifty years after our decision in *Brown*.  Because paragraph 2 involves intestacy laws that would be in effect at the time of termination, and because the time of termination was unknowable at the time of

our decision in *Brown*, we did not construe—and could not have construed—paragraph 2. Claim preclusion, therefore, is inapplicable.

[¶15] Wheeler also argues that issue preclusion applies here because "[w]ether the [s]ettlor intended to benefit just her biological descendants or whether she intended to benefit both biological and adopted descendants also is, once again, the principal issue in the instant case." This argument is also not persuasive because the determination of a settlor's intent is a question of law, whereas issue preclusion is predicated on the determination of factual issues. *See Portland Water Dist.*, 2008 ME 23, ¶ 9, 940 A.2d 1097 ("Issue preclusion, or collateral estoppel, prevents the relitigation of factual issues already decided . . . ." (quotation marks omitted)); *White*, 2005 ME 72, ¶ 19, 875 A.2d 680 ("The intent of the settlor, as determined by unambiguous language in the will, is a question of law . . . .").

[¶16] Wheeler's argument that we should review paragraph 2 through the lens of our 1957 decision (i.e., that the settlor's intent was to exclude adopted children from the periodic net income payments from the trust) would require us to (1) examine intent regarding language that is unambiguous on its face; and (2) assume that the settlor did not wish for adopted children to share in the ultimate distribution of trust principal. Neither requirement is supported by law. By referring to and relying on future intestacy laws, rather than using the word

"issue," paragraph 2 is unambiguous. The provision that "the principal . . . shall be paid over to the persons . . . to whom and in which it would then have been distributed under the intestate laws of Maine then in force" clearly provides that the intestacy laws in effect at the time of termination govern the distribution of trust principal. The 2013 Maine intestacy laws effective at the time of the trust's termination unequivocally provided that adopted children inherit from or through their adoptive parents just as biological children do. *See* 18-A M.R.S. § 2-109(1) ("An adopted person is the child of an adopting parent . . . ."). We have no basis to question the intention of the settlor of a trust where, as here, the terms are unambiguous.

[¶17] The Superior Court correctly entered a summary judgment in favor of Fiduciary because (1) res judicata does not preclude the application of paragraph 2 and (2) no genuine issue of material fact exists with regard to the unambiguous terms of paragraph 2.

The entry is:

Judgment affirmed.

**On the briefs:**

Michael L. Rair, Esq., Law Offices of Michael L. Rair, Bangor,
R. Howard Lake, Esq., Lake & Denison, Winthrop, and John E.

Nale, Esq., Nale Law Offices, Waterville, for appellant Manchester H. Wheeler Jr.

Brendan P. Reilly, Esq., and Tudor N. Goldsmith, Esq. Jensen Baird Gardner & Henry, Portland, for appellee Honora Haynes

**At oral argument:**

Michael L. Rair, Esq., for appellant Manchester H. Wheeler Jr.

Brendan P. Reilly, Esq., for appellee Honora Haynes

Kennebec County Superior Court docket number CV-2014-64
FOR CLERK REFERENCE ONLY