MAINE SUPREME JUDICIAL COURT                                      Reporter of Decisions
Decision:      2014 ME 105
Docket:        Cum-13-560
Argued:        June 10, 2014
Decided:       August 14, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

ESTATE OF HAROLD FOREST SNOW

SILVER, J.

[¶1]  Susan R. Snow appeals from a judgment of the Cumberland County Probate Court (*Mazziotti, J.*) granting a motion filed by the personal representative of the estate of Susan's father, Harold Forest Snow, to enforce a settlement agreement between the parties.  Susan contends, inter alia, that the court erred or abused its discretion in (1) concluding that a binding settlement agreement existed between the parties and (2) granting the personal representative's motion without holding a trial or evidentiary hearing or requiring the parties to submit summary judgment filings.  This case gives us the opportunity to analyze when a settlement has been reached and, if so, how to enforce the settlement agreement.  We affirm the judgment.

I.  BACKGROUND

[¶2]  The parties do not dispute the following facts.  Harold Forest Snow died on November 29, 2011, survived by four adult daughters.  On December 13, 2011, Linda C. Moulton, one of Harold's daughters, applied for

informal probate of a will dated February 20, 1997, and a holographic codicil to the will dated October 19, 2011, and for appointment as personal representative of Harold's estate. The will provides that the residuary of Harold's estate is to be divided equally among his four daughters, and nominates Linda as personal representative. In the event that Linda does not serve, the will nominates Susan R. Snow as personal representative. The codicil provides:

> I Harold Snow intend This to be part of my will. I intend that The gifts made to my daughter Susan of the camp and land in Standish on Sebago lake, and of The land known as the pasture behind my home on Pine Point Road be considered as advance distribution as part of my estate as stated in my will
>
> Harold F. Snow
>
> Oct 19 2011
> These gifts are to be valued as of the date They were Transferred to Susan
> Harold F. Snow

On December 16, 2011, the Register of Probate issued letters of authority to Linda and informally admitted the will and codicil to probate.

[¶3]  On March 20, 2012, Linda, as personal representative, filed a civil action against Susan in the Probate Court pursuant to 18-A M.R.S. §§ 1-302, 3-105 (2013) alleging that one of the transfers identified in the codicil was an improvident transfer pursuant to 33 M.R.S. §§ 1021-1025 (2013) and a product of undue influence pursuant to the common law. Linda also sought an injunction

requiring Susan to convey the property to Harold's estate and prohibiting Susan from transferring the property to a third party. On October 19, 2012, Linda petitioned for formal probate of the will and codicil.

[¶4] The parties engaged in discovery. On July 18, 2013, Susan filed a letter with the court alleging that Linda had, by "means outside of the discovery rules," obtained confidential information contained on computer discs and a hard drive found in Harold's home. Susan sought the immediate return of the discs and hard drive. On July 25, 2013, after a conference, the court ordered, inter alia, that Linda return the original discs and hard drive to Susan's attorney, that the parties' attorneys preserve and keep confidential copies of the information on the discs, and that Susan's attorney preserve the hard drive and provide Linda's attorney with a list of the contents of the drive so that Linda could request information pursuant to the discovery rules.

[¶5] On July 30, 2013, Susan appeared for her deposition at the office of Linda's attorney. Before Susan was deposed, she authorized her attorney to negotiate a settlement with Linda's attorneys. Ultimately, Susan's and Linda's attorneys went on the record before the attending professional reporter, stating: "So we are on the record here. We have settled the case. We are going to try to put down the outlines of the settlement, and then [we] are going to work on finalizing

4

it." The attorneys then discussed the details of the settlement on the record. Susan

left without being deposed.

[¶6] The terms were placed on the record on July 30, 2013, as follows:

- Terry Snow would serve as personal representative.

- Before resigning as personal representative, Linda would file an estate tax return, and would be permitted to make partial distributions to herself and to her sisters Cora Jean and Beverly, and could pay expenses, but could not sell estate assets.

- Susan would decline to serve as personal representative.

- The parties would exchange global releases of all claims relating to the estate or to Linda's acquisition of Susan's discs and hard drive. The releases would include the parties' law firms.

- Linda's law firm would destroy all copies of the information on the discs that were the subject of the discovery dispute, and Susan's law firm would preserve the original discs in perpetuity.

- Susan would sign a letter to be sent to the Scarborough Police Department retracting a criminal complaint she had filed regarding Linda's acquisition of the discs and hard drive, explaining that it had been a misunderstanding and that everything had been returned to her.

- The estate would not pay Susan's attorney fees, and Susan would waive any right to an accounting with respect to Linda's service as personal representative.

- The holographic codicil to Harold's will would be valid and enforceable, and the property described in the codicil would be valued at $400,000. If Susan's full one-quarter share of the residuary estate was more than $400,000, she would receive an additional distribution to cover the difference.

- The parties would stipulate to dismissal with prejudice of the civil action against Susan.

- The parties would execute any documents necessary to effectuate the settlement.

[¶7]   For about the next two weeks the attorneys sent proposed language back and forth to each other.  Neither side would agree to sign the other's proposed settlement documents nor would either accept the other side's proposed letters to the Scarborough Police Department.

[¶8]   Linda filed a motion to enforce the settlement agreement and to amend her civil complaint to add a claim for breach of the agreement.[1]  Susan opposed the motion to enforce but agreed that Linda should be allowed to amend her complaint. Both parties attached to their filings the transcript of the conference on July 30, 2013; the various draft agreements exchanged by the parties, along with the related email correspondence; and affidavits of counsel authenticating the documents.  Neither party requested a hearing on the motion.

[¶9]   On October 28, 2013, the Probate Court granted Linda's motion to enforce, finding that the record "contains an unequivocal stipulation by the parties' attorneys that the matter was settled" and that the material terms of the agreement were clearly defined in the transcript.   The court further found that Linda's

---

[1]  Shortly thereafter, Susan filed a complaint against Linda in the Superior Court, alleging tortious interference with an expected inheritance, intentional infliction of emotional distress, and undue influence, and seeking an accounting.  Proceedings on that complaint have been stayed pending the final disposition of the motion to enforce in the Probate Court.

proposed letter to the Scarborough Police Department and final written agreement accurately memorialized the material terms of the settlement; the court incorporated those documents by reference in the judgment, ordered that Susan sign the letter, and ordered that the written agreement be enforced. The court granted Linda's petition for formal probate of the will and appointment as personal representative, dismissed with prejudice the civil action against Susan, and denied as moot Linda's motion to amend her civil complaint.

[¶10] Susan subsequently filed a motion for findings of fact and conclusions of law. Specifically, Susan requested "that the Court make findings of fact citing to evidence in the record regarding the existence and the terms of a purported settlement agreement found by the court, including a finding as to whether such terms are ambiguous or unambiguous," "the form in which the purported settlement agreement exists," "the time when the purported settlement agreement was formed," and "the precise parties to the purported settlement agreement." The court denied the motion, concluding that "the Order and the portions of the record incorporated therein by reference provide adequate findings of fact and conclusions of law regarding the issues identified within [Susan's] motion."

## II. DISCUSSION

A.     Contract Analysis

[¶11]  "Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact."  *Muther v. Broad Cove Shore Ass'n*, 2009 ME 37, ¶ 6, 968 A.2d 539; *see also McClare v. Rocha*, 2014 ME 4, ¶ 16, 86 A.3d 22 ("Whether a contract exists . . . [is a] question[] of fact.").  "In order to be binding, a settlement agreement requires the mutual intent of the parties to be bound by terms sufficiently definite to enforce."  *Muther*, 2009 ME 37, ¶ 6, 968 A.2d 539; *see also McClare*, 2014 ME 4, ¶ 16, 86 A.3d 22 ("A contract exists when the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite." (quotation marks omitted)).  We will vacate a trial court's determination that parties intended to be bound by an agreement only if it is clearly erroneous, meaning that there is no competent evidence in the record to support that determination.  *White v. Fleet Bank of Me.*, 2005 ME 72, ¶ 11, 875 A.2d 680. The existence of contrary evidence does not render a court's findings clearly erroneous.  *See id.* ¶ 13.

[¶12]  "We have recognized a distinction between a preliminary agreement to agree and a binding settlement agreement."  *Muther*, 2009 ME 37, ¶ 6, 968 A.2d 539 (quotation marks omitted).  "Preliminary negotiations as to the terms

8

of a future agreement do not constitute a contract." *McClare*, 2014 ME 4, ¶ 20, 86 A.3d 22. "Whether the parties are merely negotiating the contract, or entering into a present contract, is purely a question of intention." *Id.* (quotation marks omitted). "The absence of a formalized contract does not affect the binding nature of a potential contract if the parties intended to close the contract prior to a formal writing." *Id.*

> The intention of the parties should be gathered from the language of any agreement, viewed in the light of the circumstances under which it was made, including the use of the words "offer" and "acceptance." Other relevant circumstances include the extent to which an express agreement has been reached on all terms to be included; whether the contract is of a type that is usually put in writing; whether it needs a formal writing for its full expression; whether it is a common or unusual contract; whether a standard form of contract is widely used in similar transactions; and whether either party takes any action in preparation for performance.

*Id.* ¶ 21 (citations and quotation marks omitted).

[¶13] The record before the Probate Court contained ample evidence that the parties intended to enter into an enforceable settlement agreement to be subsequently memorialized in writing, that the parties did in fact assent to the terms set forth on the record before the court reporter, and that the terms placed on the record reflected all of the material terms of the contract. Counsel began their conference that day with the statement, "We have settled the case." Counsel then enumerated various terms on which the parties had "agreed." Susan's deposition

did not proceed as scheduled, reflecting the understanding that the case had been resolved.

[¶14] As Susan points out, there is language in the transcript and the subsequent email correspondence indicating that the conference on the record on the day of Susan's deposition was merely an "outline," and that certain details of the agreement remained to be negotiated. The mere existence of some evidence that would support a finding contrary to the court's decision, however, does not render the decision clearly erroneous. *See White*, 2005 ME 72, ¶¶ 11, 13, 875 A.2d 680.

[¶15] Susan also suggests that the court inappropriately looked to parol evidence in determining the terms of the contract, despite finding it to be unambiguous. Contrary to Susan's contentions, the court looked to the subsequent written materials only to determine whether they *accurately memorialized* the terms orally agreed to on the record before the court reporter.

[¶16] Finally, Susan argues that the statements in the transcript cannot constitute a binding agreement because 18-A M.R.S. § 3-912 (2013) requires that the agreement be in writing, signed by all of the successors pursuant to the will. Title 18-A M.R.S. § 3-912 provides:

> Subject to the rights of creditors and taxing authorities *competent successors may agree among themselves to alter the interests, shares, or amounts to which they are entitled under the will of the decedent, or under the laws of intestacy, in any way that they provide in a written contract executed by all who are affected by its provisions. The personal representative shall abide by the terms of the agreement* subject to his obligation to administer the estate for the benefit of creditors, to pay all taxes and costs of administration, and to carry out the responsibilities of his office for the benefit of any successors of the decedent who are not parties. Personal representatives of decedents' estates are not required to see to the performance of trusts if the trustee thereof is another person who is willing to accept the trust. Accordingly, trustees of a testamentary trust are successors for the purposes of this section. Nothing herein relieves trustees of any duties owed to beneficiaries of trust.

(Emphasis added). On its face, section 3-912 sets forth the requirements for a contract *among successors* to be binding on a personal representative. *Id.* Here, the personal representative was herself a party to the agreement, and is in fact seeking to enforce the agreement. Thus, by its plain language, section 3-912 does not apply.

B. Necessity of Hearing

[¶17] Susan next argues that the Probate Court erred or abused its discretion in granting the motion to enforce the settlement agreement without holding a trial or an evidentiary hearing, or converting the motion to one for summary judgment.

[¶18] We have implicitly endorsed motions to enforce as appropriate vehicles by which parties may bring an alleged settlement agreement before a trial court. *See White*, 2005 ME 72, ¶¶ 5, 8, 10-13, 875 A.2d 680 (upholding a Probate

Court judgment granting a motion to enforce a settlement agreement); *see also*

*Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) ("[A]

party to a settlement agreement may seek to enforce the agreement's terms when

the other party refuses to comply. Where . . . the settlement collapses before the

original suit is dismissed, the party seeking to enforce the agreement may file a

motion with the trial court." (citation omitted)). Whether to hold a hearing on such

a motion is ordinarily left to the discretion of the trial court. *See* M.R.

Civ. P. 7(b)(7) ("Except as otherwise provided by law or these rules, after the

opposition [to a motion] is filed the court may in its discretion rule on the motion

without hearing."); M.R. Prob. P. 7(b) (adopting M.R. Civ. P. 7(b)).

[¶19] "[I]n circumstances where litigants dispute whether an enforceable

settlement was reached outside the presence of the court, findings of fact regarding

the terms of the agreement and the parties' intent may be required." *Muther*,

2009 ME 37, ¶ 6, 968 A.2d 539. For example, in *Marie v. Renner*, 2008 ME 73,

¶¶ 3-4, 6-10, 946 A.2d 418, we held that an evidentiary hearing was required

before the trial court could rule on a motion to enforce because the parties had not

waived such a hearing and the parties' filings were "ambiguous" and "without

more [did] not disclose the existence of a binding settlement agreement as a matter

of law." *Cf. White*, 2005 ME 72, ¶¶ 3-5 & n.2, 8, 10-13, 875 A.2d 680 (affirming a

judgment enforcing a settlement agreement after an evidentiary hearing where the

settlement discussions were not recorded due to a tape recorder malfunction). In contrast, where parties read a settlement agreement that contains all the necessary elements of an agreement into the court record, no further fact-finding is required. *See, e.g.*, *Muther*, 2009 ME 37, ¶¶ 7-8, 968 A.2d 539 (holding that a transcript of the parties' recitation of a settlement agreement into the court record "without more, conclusively establishes the existence of a binding settlement agreement as a matter of law"); *Toffling v. Toffling*, 2008 ME 90, ¶¶ 4-5, 8-9, 953 A.2d 375 (upholding a judgment enforcing a settlement agreement recited into the record at a final divorce hearing); *Transamerica Commercial Fin. Corp. v. Birt*, 599 A.2d 65, 65 (Me. 1991) (affirming a judgment based on a settlement placed on the record before the court because "[t]he oral stipulation entered on the record . . . was adequate to support the entry of a judgment finally disposing of the litigation"); *cf. Lane v. Me. Cent. R.R.*, 572 A.2d 1084, 1084-85 (Me. 1990) (holding that summary disposition of a plaintiff's claim based on an alleged settlement agreement was error where the record revealed no evidence that the plaintiff's attorney was authorized to settle the case).

[¶20] The First Circuit has similarly held that

> [t]he trial court may summarily enforce [a settlement] agreement, provided that there is no genuinely disputed question of material fact regarding the existence or terms of that agreement. When a genuinely disputed question of material fact does exist, the court should hold a hearing and resolve the contested factual issues.

*Fid. & Guar. Ins. Co.*, 541 F.3d at 5 (citation omitted); *see also Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999) ("As a general rule, a trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement."). The First Circuit has indicated, however, that this rule "assumes that the parties, or at least one of them, requested [a testimonial] hearing and had testimony worth presenting," and that "[p]arties are perfectly free to submit issues for resolution on whatever limited evidence they choose to present." *F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R.*, 449 F.3d 185, 188, 194 (1st Cir. 2006) (holding that the trial court did not err in not holding an evidentiary hearing where the parties did not request one, the court was familiar with the settlement due to judicial participation in the negotiations, and the appellant did not challenge the court's failure to hold a hearing).

[¶21]  This is not a case in which the parties recited their agreement into the trial court record, as in *Muther*, 2009 ME 37, ¶¶ 2, 7, 968 A.2d 539, or *Toffling*, 2008 ME 90, ¶¶ 4-5, 8-9, 953 A.2d 375.  The parties, however, do not dispute the authenticity or accuracy of the transcript that they submitted to the court, and the court found that the transcript unequivocally reflects a binding settlement agreement.  Under these circumstances, the parties stand in essentially the same

position as if the conference had occurred before the court, and in the absence of ambiguity of the settlement language no evidentiary hearing was required. *Compare Muther*, 2009 ME 37, ¶¶ 7-8, 968 A.2d 539, *and Toffling*, 2008 ME 90, ¶¶ 4-5, 8-9, 953 A.2d 375, *with Marie*, 2008 ME 73, ¶¶ 3-4, 6-10, 946 A.2d 418.

[¶22]   Even if the Probate Court had erred or abused its discretion in deciding the motion to enforce without holding an evidentiary hearing, we would not vacate the court's judgment unless the procedure employed was "inconsistent with substantial justice."   M.R. Civ. P. 61; M.R. Prob. P. 61.   Susan would therefore need to "demonstrate both error and prejudice resulting . . . from the claimed error."  *S. Me. Props. Co. v. Johnson*, 1999 ME 37, ¶ 9, 724 A.2d 1255 (holding that the court's failure to hold a nontestimonial hearing on a motion for attachment was harmless error).   Susan has not precisely articulated how she was prejudiced by the lack of an evidentiary hearing.

The entry is:

> Judgment affirmed.

**On the briefs:**

J. Colby Wallace, Esq., Michael R. Bosse, Esq., and Daniel J. Mitchell, Esq., Bernstein Shur, Portland, for appellant Susan R. Snow

Brendan P. Rielly, Esq., and Lee Ivy, Esq., Jensen Baird Gardner & Henry, Portland, for appellee Estate of Harold F. Snow

**At oral argument:**

J. Colby Wallace, Esq., for appellant Susan R. Snow

Brendan P. Rielly, Esq., for appellee Estate of Harold F. Snow

Cumberland County Probate Court docket number 2011-1520
FOR CLERK REFERENCE ONLY