**STATE OF MAINE**                                    **SUPERIOR COURT**

Cumberland, ss.

EUGENE O. GUMAER, as personal representative
of the Estate of Eugene A. Gumaer

                    **Plaintiff**

            v.                              Docket No. PORSC-CV-16-81

ERIK GUMAER and ANGELA GUMAER            STATE OF MAINE
Cumberland. ss. Clerk's Office

            and                          AUG 15 2017
8:19AM
RECEIVED

G. CHARLES SHUMWAY, II

                    **Defendants**

**ORDER ON PLAINTIFF'S MOTION TO ENFORCE
SETTLEMENT AGREEMENT**

This case came before the court August 11, 2017, for oral argument on

Plaintiff's Motion to Enforce Settlement Agreement, with counsel for Plaintiff and

Defendants Erik and Angela Gumaer participating. Also present but not participating

in oral argument was counsel for Defendant Charles Shumway.

Based on the entire record, the court grants Plaintiff's Motion to Enforce

Settlement Agreement as set forth below.

## I.    Background

Evelyn Gumaer Pike, Ellen Fogg, Eugene O. Gumaer, and Erik Gumaer are

siblings and the children of Eugene A. Gumaer (who will also be referred to as the

1

senior Mr. Gumaer to distinguish him from his son, Eugene O. Gumaer). (*See id.*; Compl. ¶ 5.) Angela Gumaer is Erik Gumaer's ex-wife. (Compl. ¶ 4.) Erik and Angela continue to live and raise their minor son together. (*Id.* ¶ 4.)

This case was commenced by former-plaintiff Evelyn Gumaer Pike—in her capacity as guardian and conservator for the senior Mr. Gumaer prior to his death against Erik and Angela Gumaer and attorney Charles Shumway. The complaint alleges, among other things, that: 1) the Gumaer Defendants (as Erik and Angela Gumaer will sometimes be referred to) persuaded the senior Mr. Gumaer—who suffered from dementia and other ailments—to sell his Westbrook home and to invest all of the proceeds from that sale into two other properties owned in joint tenancy with the Gumaer Defendants (Compl. ¶¶ 8, 18-21); and 2) Erik Gumaer improperly had himself named a joint tenant on the senior Mr. Gumaer's bank account(s) and—along with Angela Gumaer—proceeded to convert his funds (*Id.* ¶ 24).

The two properties owned in joint tenancy among Erik Gumaer, Angela Gumaer and the senior Mr. Gumaer prior to the latter's death are on Batchelder Road in Windham and Cummings Road in Gorham. They are referred to as the Gorham and Batchelder properties. The Gumaer Defendants also own property on Ebenezer Drive in Windham.

A.     The Mutual Release and Settlement Agreement

On September 14, 2016, in the course of a mediation facilitated by attorney John Lambert as mediator, Evelyn Gumaer Pike in both her individual capacity and

2

her capacity as guardian of the senior Mr. Gumaer, Eugene O. Gumaer, Ellen Fogg, Erik Gumaer, and Angela Gumaer executed a Mutual Release and Settlement Agreement ["the Agreement"].[1]

The Agreement provides, in pertinent part, that the parties agree as follows:

1. Erik Gumaer and Angela Gumaer agree to pay $150,000 to Eugene A. Gumaer.

2. The parties agree that for purposes of paying the $150,000, Erik Gumaer and Angela Gumaer shall initially be able to use the proceeds of the sale of the following properties for payment but that if $150,000 is not realized from the sale of the following three properties and paid to Eugene A. Gumaer, Erik Gumaer and Angela Gumaer shall remain liable for the unpaid balance of the obligation to pay $150,000, payable immediately after the sale of the three properties identified below.

   To the extent this Agreement relates to the sale of properties, the Agreement must first be approved by Barbara Carlin, Esq. and should she approve the terms of the Agreement, the Agreement must be approved by the Cumberland County Probate Judge (Approval).

   Should either Ms. Carlin or the Judge not approve the Agreement, the Parties agree to resume mediation within 30 days.

(Ex. A to Mot. to Enforce Settlement Agreement, Settlement Agreement p. 1.)

The Agreement then sets out the three properties Erik and Angela may sell to generate payment of the $150,000, which are: 1) the "Gorham property," 2) the "Ebenezer Road property," and 3) the "Batchelder Road Property" all of which are described as being "presently owned by Erik Gumaer and Angela Gumaer." (*Id.* at 1-2.) In exchange, Evelyn Pike, individually and as conservator for her father, Eugene

---

[1] Defendant Shumway is not a party to the Mutual Release and Settlement Agreement, but the Plaintiff's claims against him have been stayed pending resolution of the enforceability of the Agreement.

3

A. Gumaer, and Eugene O. Gumaer, and Ellen Fogg release Erik and Angela Gumaer from any and all claims against them and Erik and Angela Gumaer do the same. (*Id.* at 3 §§ 3(a), (b).) The release section of the Agreement further provides that "[w]hen Erik Gumaer and Angela Gumaer pay the full $150,000, Eugene A Gumaer's [sic] will deed his interest in the Gorham Property and the Batchelder Property in any manner directed by Erik Gumaer and or Angela Gumaer and discharge mortgages running to his benefit secured by these properties." (*Id.* at § 3(c).)

The Agreement also provides, in a section titled "Complaints," that "[w]ith the exception of MaineCare, the parties agree not to make any complaint to, or make a report to, any other governmental agency concerning the terms of this Mutual Release and Settlement Agreement or the issues involved in this action." (*Id.* at 4 § 13.) The Agreement further provides that "[a]ny disputes about the language of this Mutual Release and Settlement Agreement, or the interpretation or implementation of this Agreement shall be submitted to arbitration before John F. Lambert, Jr., Esq. The arbitrator shall award attorneys' fees and costs to the substantially prevailing party." (*Id.* at § 14.)

B.   Developments Following Entry of the Settlement Agreement

In support of their opposition, defendants submitted a number of exhibits as well as the affidavit of Erik Gumaer. Plaintiff's reply contains a number of supporting exhibits as well as affidavits from Ellen Fogg and Evelyn Gumaer Pike, Eugene O. Gumaer, Attorney Barbara Carlin, and Attorney David Turesky.

4

Attorney Barbara Carlin, whose approval is a condition of the Settlement Agreement, asserts that she was contacted by Evelyn Gumaer Pike and plaintiff's present attorney of record, David Turesky, in 2015 to secure MaineCare benefits for Mr. Gumaer. (Carlin Aff. ¶ 3.) Attorney Carlin asserts that due to her efforts, Mr. Gumaer was placed at Portland's Barron Center with a MaineCare subsidy. (*Id.* ¶ 4.) She also asserts that she advised Evelyn that any suit brought against Erik needed to be brought in Mr. Gumaer's name and for his benefit. (*Id.* ¶ 5.)

Attorney Turesky asserts that following the signing of the Settlement Agreement, he wrote to Ms. Carlin and DHHS seeking their approval of the Agreement. (Turesky Aff. ¶ 3.) Attorney Turesky goes on to provide a detailed description of his efforts to obtain approval of the Settlement Agreement from DHHS. (*See id.* ¶¶ 3-19.) He also details his attempts to secure Erik Gumaer's consent through his attorney, Stephen Whiting. Attorney Turesky asserts that Attorney Whiting often failed to respond to his calls and letters. (*Id.* ¶¶ 13, 15, 17-18, 20-22.)

On December 23, 2016, Attorney Turesky mailed an unopposed order of stay to the Superior Court and prepared a petition for single transaction authority for filing with the Probate Court, along with waivers and consents. (*Id.* ¶¶ 36-37.) The petition was filed on December 29, 2016, and Eugene O. Gumaer, Ellen Fogg, Attorney Rand, and Assistant Attorney General Thomas Quinn—presumably representing the interests of the Department of Health and Human Services ("DHHS")—signed and returned waivers of consent thereto. (*Id.* ¶¶ 38-39.) According to attorney Turesky,

5

attorney Whiting never signed the waiver or consent. (*Id.* ¶¶ 39-40.) Mr. Gumaer died on January 21, 2017. (*Id.* ¶ 42; *see also* Erik Gumaer Aff. ¶ 6.)

On February 3, 2017, Attorney Turesky informed the Probate Court of Mr. Gumaer's death and again requested Attorney Whiting execute the waiver and consent. (Turesky Aff. ¶¶ 44-45.) On February 8, 2017, Attorney Carlin opined to Attorney Turesky that they no longer needed Probate court approval for the Settlement Agreement. (*Id.* ¶ 46; *see also* Carlin Aff. ¶¶ 6-7.) Attorney Carlin asserted that prior to Mr. Gumaer's passing, it was her professional opinion that for the Agreement "to be properly binding and enforceable for receipt of MaineCare benefits, Probate Court approval was…required." (Cardin Aff. ¶ 6.) In light of Mr. Gumaer's passing, however, Probate Court was no longer required and any claim DHHS might have for recovery of MaineCare funds previously paid for Mr. Gumaer's nursing home care could be handled by the personal representative. (*Id.* Aff. ¶ 7.)

Attorney Turesky asserts that he communicated this information to Attorney Whiting who explained that Erik Gumaer does not like the Settlement Agreement and wants out of it. (Turesky Aff. ¶ 47.) On February 24, 2017, Attorney Turesky learned that the Probate Court canceled the conference date for the petition for single transaction authority because of Mr. Gumaer's death. (*Id.* ¶¶ 48-49.) As a result, Attorney Turesky encouraged the Gumaer family to initiate the probate process as soon as possible. (*Id.* ¶ 50.) Eugene O. Gumaer filed a formal petition for allowance to become personal representative on or about March 6, 2017. (*Id.* ¶¶ 53-54.)

On March 23, 2017, Erik and Angela Gumaer purported to withdraw their assent to the Agreement. (Erik Gumaer Aff. ¶ 8.) Erik Gumaer asserts that the deeds to the Gorham Property and Batchelder Property were titled to Mr. Gumaer, himself, and Angela as joint tenants. (*Id.* ¶ 3 and Exs. A & B thereto, deeds to the aforementioned properties).

Erik asserts that he and Angela entered into the Settlement Agreement to purchase Mr. Gumaer's 70% interests in the Gorham and Batchelder Properties for $120,000 and an additional $30,000 to dismiss the lawsuit. (*Id.* ¶ 4.) Erik contends that as a result of Mr. Gumaer's passing, he and Angela solely own the properties and he does not believe it is fair to make them pay for real estate they already own. (*Id.* ¶¶ 6-7.)

Attorney Turesky filed a second petition for single transaction authority with the Probate Court on or about March 20, 2017. (*Id.* ¶ 55.) At a conference with Probate Court Judge Mazziotti on May 24, 2017, the judge allegedly directed Attorney Turesky to prepare an order allowing the will and appointing Eugene O. Gumaer as personal representative, both with the consent of all interested parties/persons, including Erik Gumaer. (*Id.* ¶ 57.) Judge Mazziotti also purportedly indicated that the powers of the Personal Representative include those to confirm, ratify, and enforce the Settlement Agreement and that Probate Court approval was no longer needed. (*Id.*)

On June 12, 2017, Judge Mazziotti appointed Eugene O. Gumaer for appointment as personal representative of Mr. Gumaer's estate. (Exhibit to Pl.'s Supplemental Reply ISO Mot. to Enforce.) Judge Mazziotti's order further provided:

> At the request of the personal representative and two of his siblings, Ellen Fogg and Evelyn Pike, it is hereby found and determined that the personal representative has the power and authority to enter into contracts and, more specifically, he is authorized and empowered as such to accept, endorse, confirm, affirm, and ratify the Settlement Agreement of September 14, 2016 entered into by and on behalf of this decedent (before his death) and all four of his children: to wit, Evelyn Pike, Eugene O. Gumaer, Erik Gumaer, and Ellen Fogg.
>
> The orders entered herein do not, in any way, limit or abrogate Erik Gumaer's pending challenge to the Settlement Agreement as brought to the attention of the Cumberland County Superior Court under docket number CV-16-81.

(*Id.*) Thereafter, Eugene O. Gumaer accepted, as the personal representative of Mr. Gumaer, the Settlement Agreement of September 14, 2016. (*Id.*)

The affidavit jointly executed by Ellen Fogg and Evelyn Gumaer Pike asserts that following Mr. Gumaer's death, Erik Gumaer was untruthful to them about not knowing the location of Mr. Gumaer's original will as there would be no reason it would be kept in different location from their previously departed mother's will. (Fogg and Pike Aff. ¶¶ 7-9.)

The Fogg and Pike affidavit further contends that the reason for the petition the in the Cumberland County Probate Court for Evelyn's appointment as their father's conservator and guardian was because Erik failed to disclose or had been untruthful to them regarding his use and misuse of Eugene A. Gumaer's assets and properties. (*Id.*

8

¶ 11.) They also assert that Erik has continued to make trouble for them by allowing the properties referenced in the Settlement Agreement to fall into foreclosure. (*See id.* ¶ 12.)

## II. Legal Standard

Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact. *Estate of Snow*, 2014 ME 105, ¶ 11, 99 A.3d 278. In order to be binding, a settlement agreement requires the mutual intent of the parties to be bound by terms sufficiently definite to enforce. *Id.* A party to a settlement agreement may seek to enforce the agreement's terms when the other party refuses to comply. *Id.* ¶ 18 (citing *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008). The court may summarily enforce a settlement agreement provided that there is no genuinely disputed question of material fact regarding the existing or terms of that agreement. *Id.* ¶ 20 (quoting *Fid. & Guar. Ins. Co.*, 541 F.3d at 5). When a genuinely disputed question of material fact does exist, the court should hold a hearing and resolve the contested factual issues. *Id.*

## III. Discussion

Plaintiff's motion to enforce argues that that Agreement satisfies all the conditions of an integrated, enforceable contract and should be enforced by the court.

Defendants Erik and Angela Gumaer do not challenge the proposition that, on its face, the Agreement is an integrated contract. They contend that the Agreement is not enforceable for two reasons: the Probate Court has not approved it, and there has

9

been a failure of consideration. Specifically, they say that Probate Court approval was a condition precedent to the formation of a contract, or at least a condition precedent to the performance of a contract. They also say that because Probate Court approval was not obtained within a reasonable time. Lastly, they say that the fact that title to the Gorham and Batchelder properties that they were to purchase has passed to them as a result of Eugene A. Gumaer's death has created a failure of consideration, rendering the Agreement null and void.

Plaintiff replies with a variety of contentions: 1) the clear and plain language of the Settlement Agreement provides that the Gumaer Defendants, without precondition, agreed to pay Mr. Gumaer $150,000 and the fact that one particular method for collecting that sum required the approval of the Probate Court does not negate the Agreement; 2) the Gumaer Defendants cannot unilaterally rescind the Settlement Agreement because a condition precedent has yet to be fulfilled; 3) even if agreement could be rescinded if a condition precedent was not satisfied, it can only be done when the condition has not been satisfied within a reasonable amount of time and that has not occurred here; 4) the Gumaer Defendants cannot take advantage of a condition precedent that they have made impossible to fulfill, or could have prevented by reasonable actions; 5) that they have waived any condition precedent defense by agreeing to stay the present matter pending Probate Court approval; 6) Plaintiff has functionally satisfied the condition precedent by obtaining approval from Mr. Gumaer's personal representative; 7) the condition precedent is immaterial and no

10

longer necessary in light of Mr. Gumaer's passing; and 8) if the court does not view it as proper to construe and/or reform the Agreement, then it should refer the issue back to John Lambert for arbitration.

In support of plaintiff's argument that the condition precedent is immaterial and no longer necessary due to Mr. Gumaer's death, plaintiff asserts that:

> The Parties agreed to seek the approval of Barbara Carlin, the Department of Health and Human Services, and the Probate Court in order to avoid the Department's claim that the children of [Mr. Gumaer] had conspired and colluded to defraud MaineCare: that is, to enrich themselves at the expense of the public fisc. That is why the Plaintiff in this litigation was Mr. Gumaer's guardian/conservator, not Erik's three aggrieved siblings….Once Mr. Gumaer died, the need for Probate court approval disappeared….Following publication of notice to creditors by the Probate Court, the Department will—in all likelihood—file a claim against the estate pursuant to Article III, Sections 800 *et. seq.*"

(Pl.'s Reply, 11.)

A. <u>Threshold Issues</u>

Two threshold issues need to be addressed before the merits of the Plaintiff's Motion to Enforce and the Gumaer Defendant's opposition are considered.

First, the Agreement provides that disputes about the language, interpretation or implementation of the Agreement would be submitted to the mediator, John Lambert, Esq. At the August 11, 2017 oral argument, Plaintiff and the Gumaer Defendants specifically advised that they were not asking the court to send the dispute to attorney Lambert. The court responded by saying it deemed the parties to be waiving that dispute resolution provision, and the court hereby accepts the waiver.

11

Second, although none of the parties has suggested that any evidentiary hearing is necessary, the court has to consider whether to schedule an evidentiary hearing on its own motion. Upon consideration, the court concludes that no evidentiary hearing is needed because the essential facts are undisputed. Although the Gumaer Defendants do not necessarily agree with the averments of the affidavits submitted with the Plaintiff's reply memorandum—specifically with the assertion that the Gumaer Defendants have been untruthful or purposely caused delay—there is no dispute or disagreement about the following essential facts:

- The Agreement filed with the Plaintiff's Motion is a true copy of the parties' agreement.

- None of the parties has identified or argued a material ambiguity in the Agreement.

- Eugene A. Gumaer died in January 2017

- The approval of the Probate Court to the agreement was not obtained prior to Eugene A. Gumaer's death and has not been obtained since.

- The approval of the Probate Court is not necessary in light of the senior Mr. Gumaer's death.

- Ownership of the jointly held Gorham and Batchelder properties passed to Erik and Angela Gumaer upon Eugene A. Gumaer's death.

- The Gumaer defendants have since rescinded their assent to the Agreement.

12

Those are the essential facts underlying the parties' arguments for and against enforceability issue, and no evidentiary hearing is necessary.

## B. Whether the Gumaer Defendants Were Entitled to Rescind their Assent to Agreement

On its face, the Agreement is an integrated contract capable of enforcement. Nothing in the Agreement gives the Gumaer Defendants an unconditional right to rescind or withdraw their assent. The Agreement binds the Gumaer Defendants to pay Eugene A. Gumaer $150,000. The heirs and assigns provision at section 5 of the Agreement means that Eugene O. Gumaer, as personal representative, can enforce the Agreement.

Section 2 of the Agreement says that Probate Court approval was needed "[t]o the extent this Agreement relates to the sale of properties . . ." According to attorney Carlin, it also was needed for purposes of the senior Mr. Gumaer's eligibility for MaineCare benefits. After approval by attorney Barbara Carlin[2] and by the Probate Court, the Gumaer Defendants could sell the Batchelder and Gorham properties and use the sale proceeds to satisfy their $150,000 payment obligation. It was because those two properties at the time were jointly owned with the senior Mr. Gumaer that the Probate Court had to approve the sale. The senior Mr. Gumaer's death left the Gumaer Defendants with record title to the two properties, and ended his receipt of MaineCare benefits, rendering Probate Court approval unnecessary or moot.

---

[2] No issue is raised regarding Barbara Carlin's approval of the Agreement.

Thus, in no sense can Probate Court approval be considered a precondition to formation of the contract. Instead, Probate Court approval was a condition to the Gumaer Defendants being able to use sale proceeds from the Batchelder and Gorham properties to meet their $150,000 payment obligation. Were Probate Court approval to be denied, the Agreement says the parties would attempt to mediate a resolution. But now that Probate Court approval is unnecessary, the Gumaer Defendants can sell the properties and use the proceeds to fund the $150,000 payment.

As to the Gumaer Defendants' delay argument, the Agreement sets no deadline for approval by the Probate Court. The four-month period between the September 14, 2016 execution of the Agreement and the January 21, 2017 death of the senior Mr. Gumaer does not equate to unreasonable delay. This is especially true in light of the uncontroverted account of delay and inaction attributable to the Gumaer Defendants. *See* 14 J. P. Nehf, CORBIN ON CONTRACTS §78.1 (Rev. Ed. 2001) ("Some conditions are rendered impossible by the acts of the party who is trying to use the condition as a defense. This excuse should fail under the rule that a party cannot take advantage of a condition precedent which that party has made impossible or could have prevented by reasonable actions").

However, at bottom, this is not a situation in which the court needs to decide whether to excuse performance of a contract condition. Probate Court approval was once a condition of the contract, but the approval requirement has since disappeared and the condition no longer needs to be met. The non-occurrence of a contract

14

condition that no longer needs to be fulfilled is simply irrelevant, and in no way can it justify any party in rescinding the contract.

For these reasons, the court rejects the Gumaer Defendants' argument that the absence of Probate Court approval, or any delay in such approval, entitled them to rescind or withdraw their assent to the Agreement.

Similarly, the other objection that the Gumaer Defendants have raised—the alleged failure of consideration—is without merit. Their failure of consideration argument is based on the fact that the senior Mr. Gumaer's death leaves them with record title to the Batchelder and Gorham properties. Erik Gumaer's affidavit recites that "I do not think it is fair to make us pay for real estate that we already own." Erik Gumaer Aff. ¶ 7.

The Gumaer Defendants say that $120,000 of the $150,000 settlement agreement was to buy out the senior Mr. Gumaer's interest in the two properties, and the remaining $30,000 was to purchase a dismissal of the lawsuit.

What the Gumaer Defendants fail to recognize is that the consideration that they are to receive under the Agreement is not just ownership of the two properties, but rather ownership free and clear of Plaintiff's claims. Their ownership of the two properties is based on the very joint tenancy arrangements that Plaintiff wants the court to set aside as wrongful. If the settlement agreement were rescinded or voided, the effect would be to allow the Plaintiff's claim to set aside the joint tenancies to go forward, and the Gumaer Defendants could lose ownership, or be required to

15

reimburse the Estate of Eugene A. Gumaer for the entire value of his interest or his contribution to the two properties. This is why there is no merit in their claim that the fact that they now own the properties means that they can rescind the Agreement and/or should pay, at most, only $30,000.

There has been no failure of consideration as a result of the death of Eugene A. Gumaer—the Defendants will still get the full benefit of their bargain, in the form of a dismissal and release of Plaintiff's claims, if the Agreement is fully performed.

For these reasons, neither of the two objections that the Gumaer Defendants have raised to the Plaintiff's Motion to Enforce Settlement Agreement is valid. The Motion accordingly will be granted.

C. Terms of Enforcement of the Mutual Release and Settlement Agreement

The parties' obligation to proceed with the Agreement is triggered by approval by attorney Carlin, which has occurred, and by the Probate Court, which is no longer necessary. The deadlines set forth in the Agreement are measured by the date of Probate Court approval. This court's grant of the Plaintiff's Motion to Enforce includes approval of the agreement, and the approval date for purposes of the Agreement deadlines will be the date of docketing of this order.

The immediate first step, unless the Gumaer Defendants pay the $150,000, is for them to list the Gorham property for sale within 30 days of the docketing of this order. If they fail to meet that or any other deadline in the Agreement, the Plaintiff

16

may file a motion to have all of the Gumaer Defendant's responsibilities for listing and selling properties under the Agreement transferred to the Plaintiff.

IT IS HEREBY ORDERED:

1. Plaintiff's Motion to Enforce Settlement Agreement is granted. The court hereby approves the September 14, 2017 Mutual Release and Settlement Agreement.

2. The parties are ordered to implement the Mutual Release and Settlement Agreement according to its terms, using the date of docketing of this Order as the date of approval for purposes of measuring deadlines set forth in the Mutual Release and Settlement Agreement.

3. The stay of this case continues until further order, as between Plaintiff and Defendants Erik and Angela Gumaer only.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this order by reference in the docket.

Dated August 14, 2017

_____
A. M. Horton, Justice

DAVID TURESKY, ESQ
LAW OFFICE OF DAVID TURESKY
477CONGRESS STREET STE 400
PORTLAND, ME 04101-3409

THEODORE KIRCHNER, ESQ
NORMAN HANSON & DETROY LLC
PO BOX 4600
PORTLAND, ME 04112-4600

STEPHEN WHITING, ESQ
THE WHITING LAW FIRM
75 PEARL STREET, SUITE 207
PORTLAND, ME 04101-4101