STATE OF MAINE                    BUSINESS & CONSUMER COURT
CUMBERLAND, ss.             DOCKET NO. BCD-CIV-2021-00030

VOLUNTEER WELLNESS, LLC,     )
                                  )
        Plaintiff,                )
                                  )
        v.                     )   ORDER GRANTING MOTION TO
                                  )   ENFORCE SETTLEMENT AGREEMENT
SCRIMSHAW PROVISIONS, LLC, et   )
al.,                                 )
                                  )
        Defendants.           )

Plaintiff Volunteer Wellness, LLC, seeks to enforce a settlement agreement with Defendants, or in the alternative, moves for dismissal of all counterclaims against it. For the reasons discussed below, the Court grants the Motion.

**FACTS**

The unambiguous email and text correspondence which establish the material facts of this matter are undisputed.[1] On April 13, 2021, Defendants' counsel emailed Plaintiff's counsel with the following offer:

I have been authorized to make the following settlement proposal on behalf of our clients:

- Mutual release of all claims, including the termination of all agreements between the parties;

- Confidentiality;

---

[1] Because the essential facts of this matter are undisputed, the Court decides the Motion without hearing. *See* M.R. Civ. P. 7(b)(7). Further, no party requested a hearing, evidentiary or otherwise. *See Estate of Snow*, 2014 ME 105, ¶ 20, 99 A.3d 278.

1

- Dismissal of the lawsuit with prejudice, with each party to bear its own fees and costs;

- A one-time payment of $10,000, intended to purchase the collateral; and

- A payment of $36,000, payable in monthly $1000 installments.

All of this would be contingent on signing a mutually agreeable settlement agreement.

In response, on April 14, 2021, Plaintiff's counsel countered as follows:

Volunteer Wellness will settle on the following terms:

- Mutual releases and termination of agreements

- Confidentiality

- Dismissal with prejudice, each side bears its own costs and fees

- Up-front payment of $50,000

- Monthly payments of $4,000, for forty-eight months

contingent on mutually acceptable settlement agreement, and satisfactory security for monthly payment obligations (TBD).

Thereafter, back-and-forth negotiations continued by email and voice with regard to the amount of the up-front payment and the installment payments.[2] On May 14, 2021, Defendant Nicholas Westervelt ("Westervelt") sent an email stating "Thanks for the fresh offer," and countering as follows: "I'd be willing to do $5k upfront as a token gesture, and stick with the $1000/month for 36 months, but otherwise am fine to just walk away and end the rigmarole." Approximately one month later, on June 13, 2021, Plaintiff's counsel responded as follows: "Volunteer Wellness has elected to accept this settlement offer. Will you draft the documentation (I think its [sic] mutual

_____

[2] Additionally, on April 20, 2021, Justice Mallonee issued an Order commanding Defendants to surrender all collateral, provide an accounting to Plaintiff, and to take other steps. Defendants did not comply with the Order.

releases and stipulation of dismissal and dissolution of entities/termination of agreements)?" That same day, Westervelt sent a text to a third party saying: "The investors just accepted my settlement offer from a few weeks ago." On June 14, 2021, at a status conference with the Court, Plaintiff's counsel reported the case settled, but Defendants' counsel stated he was unsure and needed to check with his clients.

## DISCUSSION

A motion to enforce is an appropriate vehicle through which a party may bring an alleged settlement agreement before a trial court. *Estate of Snow*, 2014 ME 105, ¶ 18, 99 A.3d 278. Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact. *Id.* ¶ 11. To be enforceable, a settlement agreement's terms must be sufficiently definite. *Id.* A court may enforce a binding settlement agreement against a party who refuses to comply with its terms. *Id.* ¶ 18. The court may summarily enforce a settlement agreement where, as here, there is no genuinely disputed question of material fact regarding the existence or terms of that agreement. *Id.* ¶ 20.

In this case, the terms of the parties' settlement agreement are sufficiently definite to enforce. With one exception, the terms are exactly those set forth in the Defendants' original offer conveyed in writing on April 13, 2021. After approximately two months of negotiations, the only term that changed was the amount of the one-time, up-front payment. Defendants originally proposed that the payment would be $10,000. On May 14, 2021, in response to the "fresh offer" from Plaintiff, Defendants countered with a one-time, up-front payment of $5,000. On June 13, 2021, Plaintiff accepted this counteroffer, along with all the other terms which had remained unchanged from Defendants' original offer. Thus, in its final form, the settlement agreement consists of the following terms:

- Mutual release of all claims, including the termination of all agreements between the parties;

- Confidentiality;

- Dismissal of the lawsuit with prejudice, with each party to bear its own fees and costs;

- A one-time payment of $5,000, intended to purchase the collateral; and

- A payment of $36,000, payable in monthly $1000 installments.

All that remains is to write up the terms in a usual and customary settlement agreement.

Defendants object on three grounds, none of which are persuasive. First, Defendants contend Westervelt's email was not a settlement offer, but merely an invitation to negotiate. But Westervelt's email was clearly more than that. The email came six weeks into a chain of emails which were clearly intended to settle all claims against all defendants, and to address the entity issues by terminating all the LLC agreements between the parties. Moreover, the emails used clear and unambiguous negotiation terms such as "offer." In fact, Westervelt's email conveyed a firm take-it-or-leave-it offer, cutting off (rather than inviting) any further negotiations. All that was left was for Plaintiff to accept or reject the offer. Plaintiff accepted the offer, without any further negotiation.

Defendants next assert that Westervelt's offer was not timely accepted, arguing after the fact that time was of the essence. However, Westervelt's offer did not state that time was of the essence, and he did not make his offer time limited. By that point, negotiations had been occurring over a six-week period. Plaintiff accepted the offer four weeks later, which was not unreasonable under the circumstances.

Defendants finally argue that even if Westervelt's offer was timely accepted, and a sufficiently definite settlement agreement was thus concluded, the agreement should be rejected because the offer was conditioned on the notion that Defendants could resume operations. But that notion was not made a condition of acceptance, and is dispelled in Westervelt's June 13 text to a third party, clearly stating that Plaintiff had accepted Westervelt's settlement offer, and using the fact of that acceptance as the predicate for discussions with the third party about operations—not the other way around. Accordingly, Defendants have no plausible basis to avoid the conclusion that they entered into an enforceable settlement agreement with Plaintiffs on the terms set forth above.

Given the determination that the parties have an enforceable settlement agreement, the Court need not devote extensive analysis to Plaintiff's alternative request to dismiss the counterclaims against it. Defendants failed without good cause to comply with Justice Mallonee's express pretrial Order to surrender collateral, provide an accounting, and take other explicitly specific steps to protect Plaintiff in this litigation. While Defendants now attempt (unsuccessfully) to excuse their non-compliance, Defendants never sought relief from the Court's order. Compliance with orders is mandatory and expected; a party is not entitled to a separate warning that dismissal could result from non-compliance. *See St. Paul Ins. Co. v. Hayes*, 2001 ME 71, ¶ 14, 770 A.2d 611. Sanctions up to and including dismissal are appropriate to address non-compliance by a party. *See* M.R. Civ. P. 16 & 37. Here, if the Court had not determined the parties had settled all claims in their dispute, the Court would dismiss Defendants' counterclaims against Plaintiff as a sanction for failure to comply with Justice Mallonee's Order.

## CONCLUSION

5

For all of these reasons, the Court GRANTS Plaintiff's Motion to Enforce Settlement Agreement or in the Alternative for Dismissal of Counterclaims. The parties are hereby ordered to execute a usual and customary mutual release reflecting the terms discussed above, consistent with this Order, and upon execution to file with the Court a stipulation of dismissal with prejudice and without costs. All documents and filings shall be completed by no later than January 28, 2022.

SO ORDERED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: **12/27/2021**

Michael A. Duddy
Judge, Business & Consumer Court

Entered on the docket:  12/27/2021

6